**In re SEALED CASE (GOVERNMENT RECORDS).**

Nos. 91–3088, 91–3089.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1991.

Decided Nov. 22, 1991.

Bruce C. Swartz, Associate Independent Counsel, Washington, D.C., with whom Arlin M. Adams, Independent Counsel, Philadelphia, Pa., and Richard M. Sharp, Washington, D.C., were on the brief, for appellant.

Donald E. Santarelli, Washington, D.C., for appellee.

Before RUTH BADER GINSBURG, SILBERMAN, Circuit Judges, and VAN GRAAFEILAND,* Senior Circuit Judge, United States Court of Appeals for the Second Circuit.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

* Sitting by designation pursuant to Title 28 U.S.C. § 294(d).

RUTH BADER GINSBURG, Circuit Judge:

Appellant Independent Counsel challenges portions of a district court order that permit the recipient of a grand jury subpoena *duces tecum* to withhold certain categories of documents; the district court ruled that the indicated documents are "personal records" sheltered from production by the Fifth Amendment safeguard against self-incrimination. D.D.C. Order in Misc. 90–207, Feb. 1, 1991. The district judge so ruled on the basis of an *ex parte* submission by the subpoenaed witness (appellee herein) and without examining the documents that counsel for the witness placed outside the "government records" classification. We vacate the challenged portions of the district court's order and remand the matter for further consideration whether any of the documents at issue falls within the government records category and therefore is not shielded from compulsory disclosure by the Fifth Amendment privilege.

I.

The Independent Counsel who seeks more encompassing enforcement of the grand jury's subpoena is investigating possible violations of federal law, during the 1980s, by former Secretary of Housing and Urban Development Samuel Pierce, Jr. and HUD officials subordinate to him. The subpoena directed appellee, a former senior HUD official, to produce, *inter alia*, "[a]ll documents in your possession, custody, or control, obtained or generated in connection with your employment at HUD." The subpoena also required production of appellee's bank account records, tax returns, credit card expenditures, "calendars, calen-dar pads, daybooks, appointment books, or diaries," address books and rolodexes, and documents relating to charitable and political contributions by or on behalf of appellee.

Asserting her Fifth Amendment right to protection against self-incrimination, appellee first refused to produce any documents in response to the subpoena. Following written and oral arguments by both parties, and receipt of a key *ex parte* submission from appellee's counsel, the district court held that the Fifth Amendment plea did not justify withholding official records; accordingly, the court ordered appellee to produce "any and all official records" in several of the categories (lettered C–K) listed in her *ex parte* submission. The court further ruled that two of the listed categories (A and B) comprised personal records shielded from compulsory production; that one category (L) comprised records of a sole proprietorship similarly sheltered under appellee's Fifth Amendment plea; and that two other categories (L–1 [1] and M) contained non-business or other personal records also sheltered by the Fifth Amendment. Qualifying these three rulings on privileged documents, the court ordered production of any "required records," [2] such as payroll records and records reflecting political or charitable contributions, contained in the otherwise sheltered categories (A, B, L, L–1, and M). In asserted full compliance with the district court's order, appellee has produced five boxes of documents.

After moving unsuccessfully for reconsideration by the district court, the Independent Counsel pursues this appeal, asserting entitlement to any documents still in appellee's possession "that were gener-

---

**1.** This lettering follows the designation in the district judge's order, which adjusts for an apparent typographical error in the *ex parte* submission where two discrete categories are headed "L".

**2.** In *Shapiro v. United States,* 335 U.S. 1, 35, 68 S.Ct. 1375, 1393, 92 L.Ed. 1787 (1948), the Court held that records one is required by federal law or regulation to keep and make available for government inspection fall outside the Fifth Amendment privilege.

ated or obtained in connection with [appellee's] employment at HUD." [3]

## II.

■ A deferential standard of review applies to rulings on subpoenas for production of documentary evidence; an appellate court will not reverse the district court's ruling unless it is arbitrary or lacks record support. *United States v. Nixon*, 418 U.S. 683, 702, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974). We are not yet positioned to apply this standard to portions of the district court's order allowing appellee to withhold documents.

The district court's ruling relied upon appellee's *ex parte* submission, which described fourteen categories of documents but did not include the documents themselves. The court accepted these categorical descriptions as adequately informative and did not direct production of any of the documents in categories A, B, L–1, and M, or any in categories C–K that appellee may have decided were not official records. Although counsel for appellee initially objected to any production of the documents, counsel later stated that he would present "any and all documents" for the district court's *in camera* review upon telephone notice. The court did not undertake *in camera* review, however, and the Independent Counsel, even now, does not know what the alphabetical labels indicate.

A reviewing court, in these circumstances, is unable to determine whether the trial court's ruling is reasonable, *i.e.*, supported by the record and not arbitrary. The district court, as just observed, engaged in no factfinding from the documents themselves; the court neither saw the documents nor heard testimony, in open court or *in camera*, regarding the nature and use of the undisclosed documents. Because the district court accepted a blindfold, it was unable to set down reasons, capable of review, for designating certain documents as government records

and others as personal papers. *See, e.g., Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States*, 657 F.2d 5, 7–8 (2d Cir.1981).

In addition to checking the documents themselves, the trial judge might have gained reliable information about them by taking testimony from the subpoenaed witness and others concerning the nature, purpose, and use of the documents. For example, a personal secretary's testimony may be helpful in determining whether a calendar was kept simply as a personal convenience or was used by others in the agency in the conduct of their work. *See In re Grand Jury Subpoena Duces Tecum Dated April 23, 1981*, 522 F.Supp. 977, 979 (S.D.N.Y.1981) (on remand from a Second Circuit decision vacating an encompassing production order, the trial judge heard argument on general contents of executive's calendars, former secretary's testimony on how calendars were maintained, officer's testimony on company policy regarding desk and personal calendars, and *in camera* testimony of secretary regarding specific entries in calendars). At the very least, in a case such as the one before us, the district court should not rest on counsel's categorical groupings; the court should see the documents as to which the characterization "government record" or "private record" is genuinely in contention, and say why particular documents qualify as government records not subject to the Fifth Amendment privilege or, instead, as personal records for which the privilege may be invoked. *See United States v. Wujkowski*, 929 F.2d 981, 984 (4th Cir. 1991) (court should not "simply presume" that certain categories of documents, *e.g.*, "appointment books, day planners, and pocket calendars," are "intrinsically either corporate or personal in nature").

We appreciate that the documentary and perhaps witness examinations in order in this case may be arduous for the district court. We see no way other than actual

---

**3.** Principal parts of the district court's order are uncontested here: appellee does not challenge the determination that some of the documents in categories C–K (namely those she has already produced) constitute government records; the Independent Counsel does not dispute the ruling on category L (sole proprietorship records).

inspection, however, for the trial court reliably to determine the nature of particular documents, and to provide a record and reasoned decision for appellate review. If documents are so sensitive that the district court cannot publish reasons for the court's disposition without revealing information legitimately kept confidential, the court can seal the decision, thus preserving it for the court of appeals' consideration. The trial court, however, should endeavor to expose as much of the process as possible to informed argument from both parties.

### III.

Two issues remain before us at this time. First, appellee contends that even if the documents sought by the Independent Counsel are government records, appellee can still assert a privilege based on the incriminating nature of the very act of producing those documents before the grand jury. Second, appellant asserts that the district court failed to recognize the full scope of the government records exception.

### A.

Neither the government or official records exception nor the analogous corporate records exception to an individual's Fifth Amendment protection is of recent vintage.[4] In a pathmarking decision concerning corporate records, *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), the Supreme Court stated that

> physical custody of incriminating documents does not of itself protect the custodian against their compulsory production.... Thus, in the case of public records and official documents, made or kept in the administration of public office, the fact of actual possession or of lawful custody would not justify the officer in resisting inspection, even though

the record was made by himself and would supply the evidence of his criminal dereliction.

*Id.* at 380, 31 S.Ct. at 544.

 Subsequent decisions indicate that these exceptions to the Fifth Amendment privilege apply not only where the contents of the public or corporate documents might incriminate the possessor but also where the very possession of documents (and hence their production) might be incriminating. *See Davis v. United States*, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946) (affirming conviction of gas station owner based in part on his production of gasoline ration coupons that failed to cover amount of gasoline sold, in violation of federal gas rationing provisions that required the receipt and retention of coupons for all sales); *In re Sealed Case*, 877 F.2d 83, 89 (D.C.Cir.1989) (Fifth Amendment does not block appellant's compulsory production of records concerning bank account in corporation's name and funded with corporate property, nor does Amendment shield contents of those records), *cert. denied sub nom. Roe v. United States*, 493 U.S. 1044, 110 S.Ct. 839, 107 L.Ed.2d 834 (1990); *In re Grand Jury Proceedings*, 119 B.R. 945, 948, 951–52 (E.D.Mich.1990) (former bankruptcy trustee could not successfully plead Fifth Amendment on ground that documentary production in response to grand jury subpoena would force him to concede existence or absence of requested bank records, despite federal law prohibiting destruction of estate records of the kind covered by the subpoena). In *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), the Supreme Court concisely stated the governing law: "[A] corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating." *Id.* at 117, 108 S.Ct. at 2295.[5]

---

4. Although often labeled an "exception" to the Fifth Amendment privilege, government and corporate records are more accurately described as outside the scope of the privilege, which is a personal one. *See Hale v. Henkel*, 201 U.S. 43, 69–70, 26 S.Ct. 370, 376–77, 50 L.Ed. 652 (1906).

5. *Braswell* effectively rejects the portion of this court's opinion in *In re Sealed Case*, 832 F.2d 1268 (D.C.Cir.1987), that recognizes a corporate custodian's right to resist a grand jury subpoena on the ground that the act of production itself might incriminate him. *See also Braswell*, 487

Federal law makes the taking, concealing, or destroying of government property or government records a criminal offense. 18 U.S.C. §§ 641, 2071. Appellee cites these specific provisions in urging that the very production of the subpoenaed documents indeed can be an incriminating act. That may be true, but under *Braswell*, it is not material. The rationale of *Braswell*, we think, encompasses government records. Just as corporate records belong to the corporation and are held for the entity by the custodian only in an agency capacity, *see Braswell*, 487 U.S. at 107, 108 S.Ct. at 2289 (quoting *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944)), so government records do not belong to the custodian, in this case the appellee, but to the government agency. Their production thus falls outside the Fifth Amendment privilege, which is a personal one. *See supra* note 4.[6]

### B.

The precise scope of the government records exception—what is a government record and what remains a personal record—is not elaborated in case law.[7] The collective entity,[8] or corporate records, cases, however, provide a useful guide.

In determining whether a document belongs in the corporate or the personal category, courts employ a functional test. *See Wilson*, 221 U.S. at 380, 31 S.Ct. at 544

(availability of privilege depends on "the nature of the documents and the capacity in which they are held"). Under this approach, a pocket calendar kept by a business executive for her personal convenience, and to which not even her secretary had daily access, may qualify as a personal record, while a desk calendar maintained jointly by the executive and her secretary, kept open on the executive's desk, would more likely qualify as a corporate record. *See Subpoena Duces Tecum Dated April 23, 1981*, 522 F.Supp. at 982–85. The proper characterization turns less on the ownership of the calendar than on its use: a Brooks Brothers diary used to record an executive's conduct of business meetings and transactions has been held a corporate record, *see United States v. MacKey*, 647 F.2d 898, 901 (9th Cir.1981); a diary containing an individual's end-of-the-day reflections on social and business experiences, not used in conducting office affairs, ordinarily would rank as a personal item. *See Subpoena Duces Tecum Dated April 23, 1981*, 522 F.Supp. at 986.

The corporate record cases also show that a "mixed" document containing both personal and corporate notations may qualify as a corporate record. *See MacKey*, 647 F.2d at 900 (citing cases). On the other hand, a diary or calendar may remain essentially "private" and therefore shielded from compulsory production even if it con-

---

U.S. at 102 n. 2, 108 S.Ct. at 2287 n. 2 (noting circuit split).

**6.** We do not address whether appellee's act of producing government records may be used against her in subsequent criminal proceedings. *See Braswell*, 487 U.S. at 117–18 & n. 11, 108 S.Ct. at 2295 & n. 11 (corporate custodian's act of production may not be used against the custodian in a criminal prosecution); *cf. Baltimore City Dep't of Social Services v. Bouknight*, 493 U.S. 549, 561, 110 S.Ct. 900, 908, 107 L.Ed.2d 992 (1990) ("The same custodial role that limited the ability to resist the production order may give rise to corresponding limitations upon the direct and indirect use of that testimony."). No criminal charges have been filed against appellee.

**7.** *Bureau of National Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484 (D.C.Cir.1984), defines the term "agency records" as used in the Freedom

of Information Act, 5 U.S.C. § 552(a)(4)(B). That definition, governing what a private requestor can obtain from government files, is surely narrower than the definition of "government records" when the issue is what papers the government can retrieve from its employees. *See Nixon v. Sampson*, 389 F.Supp. 107, 133 (D.D.C.1975) ("It is a general principle of law that that which is generated, created, produced or kept by a public official in the administration and performance of the powers and duties of a public office belongs to the government and may not be considered the private property of the official."), *dism'd on other grounds*, 437 F.Supp. 654 (D.D.C.1977).

**8.** The exception extends to documents of collective entities other than corporations. *See, e.g., Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (partnership records); *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (labor union's records).

tains an occasional notation of a corporate appointment or activity. *See Subpoena Duces Tecum Dated April 23, 1981*, 522 F.Supp. at 986. Furthermore, the contents of "mixed" records should be culled so as to delete or excise purely private notations from a corporate record, or corporate materials mingled with private papers. *See id.* at 985–86. A witness retains the right to assert her Fifth Amendment privilege as to personal materials contained in government records; conversely, she may not shield from production government material in personal papers. The witness, we note, bears the burden of proving the nature of the documents and their various contents. *Cf. Wujkowski*, 929 F.2d at 984.

■ In sum, to determine whether a document is a government record, inquiry into the nature, purpose, and use of the document is in order, *see Wujkowski*, 929 F.2d at 984; *Grand Jury Subpoena Duces Tecum*, 657 F.2d at 8, and the precedent set in the context of corporate records should analogously apply. In addition, agency regulations regarding the treatment of certain records are relevant to the inquiry. For example, where either a collective entity or a government agency directs employees to keep certain papers or notes in performing assigned work, the direction counts as evidence that the document is job-related and not simply or principally a personal record. *See, e.g.,* HUD General Records Schedules, *contained in* HUD Handbook 2228.2. Office procedures, such as a secretary's or co-workers' access to and use of a document, can also help inform the court as to the nature of the document. *See supra* p. 738.

For the reasons stated, we vacate the portions of the district court's order that shield from inspection documents in categories A, B, L–1, and M, and any documents in categories C–K that appellee has not already produced, and we remand the case for further proceedings consistent with this opinion.

*It is so ordered.*