UNITED STATES of America, Appellant,

v.

Deborah Gore DEAN, Appellee.

No. 92–3180.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 17, 1992.

Decided April 6, 1993.

Bruce C. Swartz, Deputy Independent Counsel, Office of Independent Counsel, Washington, DC, with whom Arlin M. Adams, Independent Counsel, Philadelphia, PA, and Jo Ann Harris, New York City, and Paula A. Sweeney, Associate Independent Counsel, Office of Independent Counsel, Washington, DC, were on the brief, for appellant.

Stephen V. Wehner, with whom Donald E. Santarelli and Richard O. Wolf, Washington, DC, were on the brief, for appellee.

Before WALD, D.H. GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

This appeal grows out of the Independent Counsel's investigation of allegations that former Secretary of Housing and Urban Development (HUD) Samuel Pierce, Jr. and other HUD officials violated certain federal laws in awarding HUD grants and contracts. The district court ruled that defendant Deborah Gore Dean had to produce certain government records in response to a grand jury subpoena but that the Independent Counsel could not use evidence of Dean's act of production against her at trial. For the reasons discussed below, we affirm the district court.

I.

On May 18, 1990, as part of the investigation, the grand jury working with the Independent Counsel issued a subpoena *duces tecum* to Dean, who served as an executive assistant to Pierce from 1984 to 1987. The subpoena ordered Dean to produce all documents in her possession related to her prior employment at HUD. Invoking her fifth amendment right against self-incrimination, Dean refused to comply with the subpoena. The district court then ordered her to produce the documents. Eventually, Dean turned over 5 boxes of papers but she continued to withhold other documents, including her appointment calendars, which she asserted were her personal property. The district court agreed with her and rebuffed further attempts by the Independent Counsel to obtain the material.

The Independent Counsel then appealed to this court which ordered Dean to produce all government records in her possession. *In re Sealed Case (Government Records)*, 950 F.2d 736 (D.C.Cir.1991). In so ruling, we held that "government records do not belong to the custodian, in this case the appellee, but to the government agency. Their production thus falls outside the Fifth Amendment privilege, which is a personal one." *Id.* at 740. We remanded the case to the district court to determine what records remaining in Dean's possession constituted government records.

In the district court, Dean took the position that all of the documents, in their entirety, were personal. After conducting an *in camera* review, the lower court rejected her position and ruled that the documents were government records. Dean then turned them over to the government. Subsequently, the grand jury indicted Dean on 13 counts of criminal misconduct, alleging that she used her influence at HUD to obtain federal grants for clients of her family and friends, accepted money from private sources for the performance of public duties and lied about her activities in testifying before Congress.

The Independent Counsel sought before trial to introduce as evidence at trial some of the records obtained, including excerpts from Dean's appointment calendars, a handwritten "to do" list and a two-page, typed document resembling a diary. The Independent Counsel also sought to introduce evidence that Dean produced the doc-

uments in response to a government subpoena, contending that her act of production would both authenticate the documents and imply concealment or consciousness of guilt on her part. Dean did not assert a fifth amendment right as to the contents of the documents. She did claim, however, that the government could not use against her at trial her act of producing the documents pursuant to a subpoena without violating that right.

The district court granted Dean's motion to suppress evidence of her act of production, concluding that her act was testimonial in nature. The court also reserved judgment on whether certain portions of the documents, which he thought might be "purely private," would have to be redacted at trial. Memorandum in Support of Order of. July 6, 1992 at 6. The Independent Counsel now appeals.

## II.

The fifth amendment prohibits the government from compelling a citizen to incriminate himself through testimony.[1] The amendment guards against "the extortion of information from the accused that offends our sense of justice." *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973). The Supreme Court has recognized that various types of evidence may be testimonial in nature, including the act of producing materials in response to a subpoena. *See Fisher v. United States*, 425 U.S. 391, 410–11, 96 S.Ct. 1569, 1580–81, 48 L.Ed.2d 39 (1976). Because compliance with a subpoena acknowledges by implication both the "existence of the papers demanded and their possession or control," the Court stated that the act of production "has communicative aspects of its own, wholly aside from the contents of the papers produced." *Id.*

■ On the other hand, the Supreme Court has also insisted that an individual cannot rely upon the fifth amendment privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity. *See, e.g., Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906). These decisions recognize that the fifth amendment privilege is a purely personal one that "protects only the natural individual from compulsory incrimination through his own testimony or personal records." *United States v. White*, 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944). Accordingly, the government, corporations and other collective entities are not entitled to fifth amendment protection.

■ Dean first asserts that she possesses a fifth amendment privilege here because she acted in a personal capacity rather than as a government custodian when she produced the records. To support her contention, Dean argues preliminarily that the Independent Counsel abandoned his position that she was a government custodian in the district court. During the hearing on Dean's motion to suppress, the Independent Counsel argued that "it is our position that Miss Dean does not hold these documents as a custodian. She has government records in her possession. They are the property of the government. That's already been ruled on by the courts here." Supp.App. at 2. This somewhat confused and contradictory statement does not suggest to us that the Independent Counsel abandoned his position that Dean was acting in a non-personal capacity. Indeed, the Independent Counsel consistently asserted that Dean retained control of "property of the government." *Id.* In *Government Records*, 950 F.2d at 740, we made clear that we considered Dean to be acting as a custodian of any government records she retained. We stated that "government records do not belong to the custodian, in this case, the appellee [Dean], but to the government agency." *Id.* The district court subsequently found that the records at issue here are government records,

---

1. The fifth amendment states, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

a finding Dean does not contest. *See* Tr. of Hearing of February 10, 1992 at 21–22; App. at 54–55. Under our reasoning in *Government Records,* the district court's finding that these records are government records leads us to reaffirm our earlier conclusion that Dean was the custodian of the records.[2]

The fact that Dean was acting in a custodial capacity, however, does not necessarily deprive her of all fifth amendment protection. The Supreme Court has held that a custodian of *corporate* records can be required to produce those records but evidence of the act of production cannot be used against him. *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). The petitioner in *Braswell* was the president of two corporations. He received a subpoena *duces tecum* requiring him to produce corporate documents to a federal grand jury. The Court first reaffirmed that "the custodian of corporate records may not interpose a Fifth Amendment objection to the compelled production of corporate records, even though the act of production may prove personally incriminating." *Id.* at 111–12, 108 S.Ct. at 2292. The Court emphasized that a corporation, like other collective entities, has no fifth amendment rights. *Id.* at 105–06, 108 S.Ct. at 2288–89. Since a corporation can act only through its officers and employees, an officer or employee who is a custodian of corporate records "holds those documents in a representative rather than a personal capacity." *Id.* at 110, 108 S.Ct. at 2291. The Court concluded that a corporate custodian's "assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the

Government." *Id.* By acting in a representative capacity, the corporate custodian cannot assert his own fifth amendment rights with respect to records belonging to the corporation. *Id.* at 112, 108 S.Ct. at 2292. "Any claim of [f]ifth [a]mendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege." *Id.* at 110, 108 S.Ct. at 2291.

Nonetheless, in *Braswell* the Court was careful to acknowledge the limits of the agency relationship. It noted that "in a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian." *Id.* at 118, 108 S.Ct. at 2295. According to the Court, the restriction is "a necessary concomitant of the notion that a corporate custodian acts as an agent and not an individual when he produces corporate records in response to a subpoena addressed to him in his representative capacity." *Id.* at 118 n. 11, 108 S.Ct. at 2295 n. 11. Relying on *Braswell,* five circuits have ruled inadmissible act of production evidence in the criminal trials of corporate custodians.[3]

This circuit has applied *Braswell* in the *government* employee context, concluding that "the rationale of *Braswell* . . . encompasses government records." *Government Records,* 950 F.2d at 740. There we stated that

[j]ust as corporate records belong to the corporation and are held for the entity by the custodian only in an agency capacity, . . . so government records do not belong

---

**2.** Although we affirm the district court, we do so on different reasoning as we are authorized to do when appropriate. *See Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.,* 941 F.2d 1220, 1230 (D.C.Cir.1991). The district court concluded that Dean did not act as a custodian when she produced the HUD records and, for that reason, Dean's act of production was entitled to fifth amendment protection. *See* Memorandum in Support of Order of July 6, 1992 at 4–5. We had previously concluded, however, that Dean acted in a custodial capacity. Nonetheless, for the reasons set forth in our opinion,

we agree with the district court's ruling that the Independent Counsel may not use Dean's act of production against her.

**3.** *See, e.g., In re Grand Jury Subpoenas,* 959 F.2d 1158, 1164 (2d Cir.1992); *In re Grand Jury Subpoena,* 957 F.2d 807, 811 (11th Cir.1992); *In re Custodian of Records of Variety Distributing, Inc.,* 927 F.2d 244, 251 (6th Cir.1991); *In re Special Fed. Grand Jury Empanelled,* 819 F.2d 56, 59 (3d Cir.1987); *In re Grand Jury Subpoena (85–W–71–5),* 784 F.2d 857, 861 (8th Cir.1986).

to the custodian ... but to the government agency. *Id.* Inasmuch as we have applied the agency rationale to the custodian of government records, and in light of *Braswell*'s extension of fifth amendment protection to act of production evidence as a "necessary concomitant" of the agency relationship, it seems reasonable and logical to conclude that the *Braswell* protection extends to the custodian of government records as well.

But the Independent Counsel asserts that government records are fundamentally different from corporate records and urges us not to extend the reasoning of *Braswell* to government records. For support, he relies on several cases involving "required records." Required records are records which must be kept pursuant to a government regulatory scheme and which relate to information of a public character. *See Marchetti v. United States*, 390 U.S. 39, 57, 88 S.Ct. 697, 707, 19 L.Ed.2d 889 (1968). The government may compel the production of required records without violating the fifth amendment. *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). Because the custodian must keep the records, the act of producing them under subpoena creates no implication of guilt. *Marchetti*, 390 U.S. at 57, 88 S.Ct. at 707; *see also In re Grand Jury Subpoena Duces Tecum Served upon Underhill*, 781 F.2d 64, 70 (6th Cir.1986). Thus, in *Davis v. United States*, 328 U.S. 582, 590, 66 S.Ct. 1256, 1260, 90 L.Ed. 1453 (1946), relied on by the Independent Counsel, the Court allowed the government to introduce evidence that the defendant had produced an insufficient number of gasoline rationing coupons. Applicable law required all gas station operators to collect and preserve coupons representing the amount of gas they sold. *Id.* at 588, 66 S.Ct. at 1258. Although the defendant, by producing the coupons, may have admitted by implication both their existence and his possession of them, those admissions inherent in the act of production were not incriminating; given the defendant's legal obligation to keep such documents, production of them did little to demonstrate his guilt. *Id.*

The Independent Counsel also relies on *In re Grand Jury Proceedings (Jim's Garage)*, 119 B.R. 945, 950–53 (E.D.Mich. 1990), in which the district court allowed the government to use act of production evidence against a bankruptcy trustee who was required to create and maintain certain bankruptcy records. The court concluded that the production of records which the trustee had a statutory obligation to maintain was not inherently incriminating. *Id.*[4] *See also* 11 U.S.C. § 704 (prescribing record-keeping duties of bankruptcy trustee).

Unlike the records in *Davis* and *Jim's Garage*, however, the records Dean produced pursuant to subpoena are not required records.[5] Although, according to HUD regulations, Dean had a duty to present the documents to HUD for inspection before removing them, she had no obligation to create the documents in the first place. *See* HUD Handbook § 2228.1. She could have fulfilled her duties at HUD without keeping appointment calendars, "to do" lists and diaries. They are not "public documents, which the defendant was required to keep, not for his private uses, but for the benefit of the public." *Jim's Garage*, 119 B.R. at 950. Accordingly, we cannot say that Dean's act of production,

---

4. In *Jim's Garage*, the district court refused to apply *Braswell* on the ground that a bankruptcy trustee is not a collective entity. *Jim's Garage*, 119 B.R. at 951. *Braswell*, however, focused not only on the rights of collective entities but also on the rights of those acting on behalf of collective entities, i.e., corporate custodians. To the extent that it differs from our analysis here, we reject the reasoning of *Jim's Garage*.

5. We have recognized that corporate records include, but are not limited to, required records. *See In re Sealed Case*, 877 F.2d 83, 87–88 (D.C.Cir.1989). Thus, required records are a subset of corporate records. There is no reason to treat government records as different from corporate records to the extent that the former similarly includes required records. *See Davis*, 328 U.S. at 588, 66 S.Ct. at 1258. When the Court long ago declared that a corporation or other collective entity has no fifth amendment privilege, it noted that corporate records, in the fifth amendment context, are analogous to government records. *Wilson*, 221 U.S. at 382, 31 S.Ct. at 545.

like the act of producing required records, contained no incriminating message. We therefore decline to apply the reasoning of the "required records" line of cases as the Independent Counsel urges.[6]

We see no reason not to extend the reasoning of *Braswell* to the government records Dean held as a custodian. Accordingly, we hold that, under *Braswell*, the Independent Counsel may not use Dean's act of production against her at trial. The Independent Counsel *may* employ the method outlined in *Braswell* to authenticate and introduce at trial the government records it obtained from Dean. Although the Court in *Braswell* did not allow the government to use act of production evidence, it did suggest that the government could "offer testimony ... from the process server ... and from the individual who received the records—establishing that the corporation produced the records subpoenaed." *Braswell*, 487 U.S. at 118, 108 S.Ct. at 2295. The Court also suggested that the jury could fairly conclude from such testimony both that the records were authentic and that the custodian, because of his position in the corporation, had knowledge of the records. *Id.* This procedure allows the Independent Counsel to introduce testimony that the documents are HUD documents and that they were produced by the agency

in response to a subpoena. This method of authenticating the documents preserves Dean's right against self-incrimination. The jury might infer that Dean created and kept the records but that inference will not come from Dean's testimonial act of production.[7]

■ We turn to the Independent Counsel's contention that the district court erred by reserving its ruling on "the extent to which, if any, purely private material found in the documents may have to be redacted, the admissibility of the documents and any claim by the defendant that the portions of the papers selected by independent counsel are incomplete." Memorandum in Support of Order of July 6, 1992 at 6. The lower court did no more than acknowledge by this statement that some portions of the documents might be more prejudicial than probative or might not be relevant under applicable rules of evidence. *See* Fed. R.Evid. 402, 403. The district court, having decided the fifth amendment issue, was concerned at that point with admissibility issues. We think that the Independent Counsel's attempt to appeal the district court's reserved ruling fails.

While the government may appeal "from a decision or order of a district courts [sic] suppressing or excluding evidence," that

---

**6.** Other circuits have used an alternative rationale for the required records exception, finding that an individual who chooses to do business in an area in which the government requires record keeping "may be deemed to have waived any [f]ifth [a]mendment protections which would otherwise be present." *In re Grand Jury Subpoena Duces Tecum Served upon Underhill*, 781 F.2d 64, 70 (6th Cir.1986); *see also In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983*, 722 F.2d 981, 987 n. 5 (2d Cir.1983); *In re Grand Jury Proceedings (McCoy)*, 601 F.2d 162, 171 (5th Cir.1979).

The Independent Counsel urges us to extend the waiver rationale to government records, arguing that a government employee, by consenting to act as a custodian, waives any fifth amendment protection against evidence of his act of production. We decline to adopt this reasoning. *Braswell* does not use a waiver analysis. *But cf. Braswell*, 487 U.S. at 130, 108 S.Ct. at 2301 (Kennedy, J. dissenting). The limitation on the custodian's personal fifth amendment protection imposed in *Braswell* flows from the custodian's status as an agent. Moreover, the

waiver rationale could eliminate the custodian's protection against act of production evidence. That protection, according to *Braswell*, is a "necessary concomitant" of the fact that a corporate, or government, custodian acts in a representative rather than a personal capacity. *Braswell*, 487 U.S. at 118 n. 11, 108 S.Ct. at 2295 n. 11.

**7.** The procedure is also consistent with Federal Rule of Evidence 901 which permits authentication by evidence "sufficient to support a finding that the matter in question is what its proponent claims." The rule contains an illustrative, but not exhaustive, list of suggested methods of authentication including authentication through the testimony of a witness with knowledge. *Id.* The Independent Counsel could use a witness capable of recognizing and identifying the documents as HUD records to authenticate them. By allowing the Independent Counsel to use the *Braswell* method of authentication, we do not mean to preclude other methods of authentication available under Rule 901. Any method chosen by the Independent Counsel, however, may make no reference to Dean's act of production.

appeal cannot be taken after the defendant faces double jeopardy. 18 U.S.C. § 3731. Ordinarily, then, the government must appeal from such an order before trial. Although the government may appeal in a criminal case only when it has express statutory authority to do so, section 3731 by its own terms is to be read liberally. *See United States v. Wilson,* 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975); 18 U.S.C. § 3731 ("provisions of this section shall be liberally construed to effectuate its purposes"). But section 3731 allows appeal only from an order "suppressing or excluding evidence." The district court did neither here; it merely declined to determine *in limine* the admissibility of each portion of the documents. Because the district court deferred its decision on admissibility, the Independent Counsel cannot take an appeal from the ruling at this time.

### III.

It is well settled that Dean has no fifth amendment privilege with respect to the contents of government records in her possession. She does not contend otherwise. It is equally clear, as *Braswell* and earlier cases demonstrate, that Dean, as a government custodian, may not invoke her personal fifth amendment privilege to refuse to produce subpoenaed documents. Yet, as *Braswell* makes clear, evidence relating to her act of production does trigger fifth amendment protection.

Although the Independent Counsel may not use Dean's act of production against her, he may introduce testimony that the documents she possessed are HUD documents produced by HUD in response to a subpoena. Finally, because the district court deferred until trial its ruling on the admissibility of portions of the documents, the Independent Counsel's attempt to appeal from the reserved ruling fails.

*Affirmed.*