GLOVES, INC., Ronald
A. Mis, Plaintiffs,

v.

Stephen C. BERGER, Russell Berger,
Constance Berger, Defendants.

No. Civ.A. 98–11970–NG.

United States District Court,
D. Massachusetts.

Dec. 11, 2000.

Charles M. Campo, Jr., Campo Anderson, LLP, Boston, MA, Evans Huber, Kassler & Feuer, P.C., Boston, MA, for defendant.

William M. Hill, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for plaintiff.

### *MEMORANDUM AND ORDER ON VALIDITY OF DEFENDANTS' INVOCATION OF FIFTH AMENDMENT PRIVILEGE IN RESPONSE TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS*

COLLINGS, Chief United States Magistrate Judge.

### *I. Introduction*

The District Judge to whom this case is assigned has referred to the undersigned the question of whether the privilege provided by the Fifth Amendment is properly claimed by the defendants Stephen and Russell Berger, former employees of the plaintiff Gloves, Inc. (hereinafter "Gloves") in response to plaintiffs' requests for production of documents pursuant to Rule 34, Fed.R.Civ.P. The documents are certain of Gloves' corporate records which were purchased by the plaintiffs in an Asset Purchase Agreement and later removed from the plaintiffs' possession by the defendants without permission or authority.

## II. The Facts

On September 28, 1998, Gloves and its majority shareholder Ronald A. Mis (jointly "the plaintiffs") filed a complaint against Stephen C. Berger, a former officer and owner of Gloves' predecessor corporation and his son, Russell Berger, former President of Gloves (collectively, the "defendants"[1]). The following pertinent facts are undisputed by the parties.

Pursuant to an Asset Purchase Agreement dated May 1, 1997, the plaintiffs purchased the operating glove businesses which constitute Gloves from Stephen C. Berger. Section 1.01(j) of the Asset Purchase Agreement plainly states that among the assets the plaintiffs purchased from Stephen C. Berger were the following:

> Originals or, where not available, copies of all ... accounting and financial information, customer and supplier records and lists, customer files and account histories, catalogues and marketing materials, records relating to accounts receivable, payroll and personnel records, plans, procedures and all other books, records and papers of the Seller relating to the conduct or operation of the Business for the past five years.

Exhibit "A" of Plaintiffs' Memorandum, Etc. (# 67).

After the Asset Purchase Agreement was executed, Russell Berger, who had been an officer and director in the glove businesses, became the Chief Operating Officer and President of Gloves until his termination on or about July 7, 1998. In addition, after the asset purchase, Stephen C. Berger, former owner of the glove businesses, became a paid consultant to Gloves until January 1, 1998 when his consulting relationship was terminated.

As alleged in their complaint, plaintiffs contend that within months of the purchase, it was discovered that the defendants were engaged in criminal and fraudulent conduct. Russell Berger was terminated as a result of the initial discovery. However, the plaintiffs claim that prior to Russell Berger's termination but after he had been informed that Gloves was contemplating filing a lawsuit against him and his father, the defendants stole certain of Gloves' corporate records and documents from the offices of Gloves in Taunton, Massachusetts.

On or about September 28, 1998, the plaintiffs filed a complaint against the defendants alleging that they engaged in a conspiracy to defraud Gloves and to drive the company out of business. On January 15, 1999, an amended complaint was filed which alleged violations of civil RICO, breach of contract, breach of fiduciary duty, conversion, fraud, unfair and deceptive trade practices under Massachusetts law, civil conspiracy and fraudulent conveyance. It was also alleged that the defendants engaged in a "criminal course of conduct" which included collecting "kick-back" payments through Gloves' suppliers and circumventing U.S. Customs regulations as well as filing false U.S. Customs declarations.

On October 14, 1998, the plaintiffs served their First Request for Production of Documents to the defendants. In particular, the following were requested:

(3) Any and all documents which refer, reflect or otherwise relate to the payment of any funds or any other consideration, of whatever kind, to any customer and/ or supplier of Gloves, Inc. by Stephen Berger and/ or Russell Berger or any of their agents, attorneys or other representatives.

(4) Any and all documents which refer, reflect or otherwise relate to Gloves, Inc.'s purchase or sale of any merchandise or inventory, including but not limited to invoices, receipts, correspondence, bills of lading, and/ or custom declarations.

(5) Any and all documents which refer, reflect or otherwise relate to any communication or correspondence between Russell Berger and/ or Stephen Berger

---

1. The issue of production of corporate records does not apply to the defendant Constance Berger who was added as a party defendant in an Amended Complaint (# 36). In the Amended Complaint, she is alleged to have received certain funds which Stephen C. Berger allegedly embezzled from Gloves. *See* # 36 at p. 4–5, ¶ 12.

and the United States Customs Service or any of their agents, attorneys, or other representatives.

Plaintiffs' First Request for Production of Documents at p. 5.[2]

On January 26, 1999, the District Judge to whom this case is assigned entered a Limited Stay of Discovery Order (# 37) which prohibited all testimonial discovery from the defendants. Specifically depositions, interrogatories, and requests ·for admission from the defendants were prohibited. The Order did not prohibit the plaintiffs from propounding document requests on the defendants pursuant to Rule 34, Fed.R.Civ.P.

The defendants produced documents in response to two of the plaintiffs' Requests for Production of Documents. Production of certain corporate documents requested in the two document requests was withheld on the ground that compelled production of such documents would violate the defendants' privilege against self-incrimination. On October 8, 1999, the District Judge ordered the defendants to prepare and produce privilege logs identifying each document withheld by date, type of document, the number of pages, author/recipient and the applicable privilege claimed for each document. The defendants produced a privilege log for each of the two requests; in each, they identified and described corporate and business documents and records that were withheld from production based on the Fifth Amendment privilege.

After a status conference held on December 16, 1999, the undersigned requested and received from the defendants a brief in support of their contention that they were entitled to assert their Fifth Amendment privilege against self-incrimination so as to withhold from production documents requested by the plaintiffs. In light of their assertion of privilege, the burden is on the defendants to establish how their "act of production" would be testimonial, given the means by which they came into possession of the documents and the capacity in which they currently hold them.

On May 22, 2000, defendant Russell Berger pleaded guilty to conspiracy charges to commit wire fraud and smuggle mislabeled goods. On August 21, 2000, he was sentenced to twenty-seven months imprisonment.[3] The U.S. Attorney's Office criminal investigation of Stephen C. Berger continues. He has not been charged as of this date.

### III. Discussion

The Fifth Amendment provides that, "No person ... shall be compelled in any criminal case to be a witness against himself." The First Circuit has noted that:

Although the Constitution couches the applicability of the Fifth Amendment privilege against self-incrimination in terms of criminal cases, it is now beyond question that the right of a witness not to give incriminating answers applies with equal force to any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory, whenever the answer to a question put to a witness might tend to subject him to criminal responsibility.

*In re Kave*, 760 F.2d 343, 353–54 (1st Cir.1985). It follows that the individual defendants in this civil case retain their Fifth Amendment privilege.

■ Corporations have no such right. And it is clear beyond peradventure that *present* employees of a corporation do not have the right to invoke the Fifth Amendment privilege to resist producing corporate documents even if those records would tend to incriminate the person producing the records. The case of *Braswell v. United States*, 487 U.S. 99, 113, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), stands unequivocally for this proposition. The question presented in the present case is whether the defendants, who are now *former* employees of the corporation, may properly invoke the privilege to resist producing records of the plaintiff corporation on the ground that the act of production would incriminate them.

It is of note that the Court in *Braswell* distinguished between the obligation of a cus-

---

**2.** Plaintiffs also served a Second Request for Production of Documents.

**3.** *United States v. Russell Berger*, Cr. 2000–10154–RGS (D.Mass.).

todian to produce corporate records without the protection of the Fifth Amendment and the consequences to the person of the custodian which would flow from that production. Thus, the Court in *Braswell* wrote that:

> Although a corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating, we do think certain consequences flow from the fact that the custodian's act of production is one in his representative rather than personal capacity. Because a custodian acts as a representative, the act is deemed one of the corporation and not the individual. Therefore, the Government concedes, as it must, that it may make no evidentiary use of the "individual act" against the individual.

*Braswell*, 487 U.S. at 117–18, 108 S.Ct. 2284.

The problem in the instant case arises because the defendants are no longer employees of the corporation. Are they nonetheless representatives of the corporation to the extent that they hold documents which are clearly corporate as opposed to personal in nature? Does the availability of the Fifth Amendment privilege rise or fall on whether the person from whom the records are sought is a present employee of the corporation whose records are sought? Or does the nature of the records as corporate render any person who has possession of them, even a thief, a "representative" of the corporation? These questions have split the circuit courts, and, unfortunately, the First Circuit has yet to have occasion to rule on the issue.

The leading case for the proposition that a former employee does have a Fifth Amendment right to resist producing corporate records in his possession is the case of *In Re Three Grand Jury Subpoenas Duces Tecum*, 191 F.3d 173 (2 Cir., 1999) (hereinafter, the "*Three Subpoenas*" case).[4] In that case, the Second Circuit focused on the relationship between the former employee and the corporation, and wrote that:

> ... once the agency relationship terminates, the former employee is no longer an agent of the corporation and is not custodian of the corporate records. When such an individual produces records in his possession he cannot be acting in anything other than his personal capacity.

*Three Subpoenas*, 191 F.3d at 181.

If the issue is phrased in this manner and traditional principles of agency law are applied, it is hard to dispute the Second Circuit's conclusion. However, Judge Cabranes, dissenting in the *Three Subpoenas* case, pointed out that the relationship between the one who is asked to produce the corporate documents and the corporation itself is not determinative; it is the nature of the documents themselves as corporate records which controls. As support for that proposition, he cites the case of *Wheeler v. United States*, 226 U.S. 478, 490, 33 S.Ct. 158, 57 L.Ed. 309 (1913) in which the Supreme Court wrote that although the corporation had "gone out of existence, leaving its books and papers in the hands of the defendants,"

> ... the privilege of individuals of their own books and papers prevent the compulsory production of the books of a corporation with which they happen to be *or have been associated.* It was the character of the books and papers as corporate documents which justified the court in ordering their production ... We think the character of the books was not changed for their purpose, because the corporation had gone out of existence after making over the books to the defendants. Such books and papers still remained subject to inspection and investigation and no constitutional right of the defendants was violated when, being found in possession of the documents, they were required to produce them to the Grand Jury.

*Wheeler*, 226 U.S. at 490, 33 S.Ct. 158 (emphasis supplied) *cited and quoted in Three Subpoenas*, 191 F.3d at 184 (Cabranes, J., dissenting).

---

**4.** In the case of *In re Grand Jury Proceedings*, 71 F.3d 723 (9 Cir., 1995), the Ninth Circuit, without any extended discussion, followed the Second Circuit rule which had originally put forth in the case *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983* (otherwise known as the *"Saxon Industries"* case), 722 F.2d 981 (2 Cir., 1983). The Second Circuit reaffirmed that rule in the *Three Subpoenas* case.

Seven years earlier, the Eleventh Circuit came to a similar conclusion as did Judge Cabranes in the case of *In re Grand Jury Subpoena Dated November 12, 1991,* 957 F.2d 807 (11 Cir., 1992) in which the Court held that:

> ... [A] custodian of corporate records continues to hold them in a representative capacity even after his employment is terminated. It is the immutable character of the records as corporate which requires their production and which dictates that they are held in a representative capacity. Thus, the production of such documents is required regardless of whether the custodian is still associated with the corporation ...

*In re Grand Jury Subpoena Dated November 12, 1991,* 957 F.2d at 812 *citing Wheeler,* 226 U.S. at 490, 33 S.Ct. 158 (other citations omitted).

In the case of *In re Sealed Case (Government Records),* 950 F.2d 736 (D.C.Cir., 1991), the Court of Appeals used the same rationale to hold that a former government employee could not refuse to produce government documents in his possession even though the act of producing them would be incriminating since theft of government property is a crime. *Id.* at 740. The Court, in an opinion by then Judge Ruth Bader Ginsburg, wrote that the fact that production would be incriminating is "immaterial" under *Braswell:*

> Just as corporate records belong to the corporation and are held for the entity by the custodian, only in an agency capacity, *See Braswell,* 487 U.S. at 107, 108 S.Ct. at 2289 (quoting *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944)), so government records do not belong to the custodian ... but to the government agency. Their production thus falls outside the Fifth Amendment privilege, which is a personal one.

*In re Sealed Case,* 950 F.2d at 740 (other citation omitted).

In my opinion, the reasoning of these cases and Judge Cabranes' dissent is more persuasive than that of the majority in the *Three Subpoenas* case. The majority's main premise is that a person who comes into possession of corporate records as an employee holds them in a representative capacity but if the individual leaves the corporation with the records, he holds the very same records not in a representative capacity but in a personal capacity. This distinction makes no sense. The plain fact is that the person, whether a present employee or a former employee, came into possession of the documents *because* at the time, he or she was an agent of the corporation. The person would not have had the ability to take possession of the corporate records but for the person's status as an agent of the corporation at the time.[5] In these circumstances, there is nothing illogical in the notion that the former employee continues to hold the documents in a representative capacity. This appears to be the rationale of the decision in *In Re Sealed Case* when the Court wrote that a former government employee, like a former corporate employee, could not resist producing government (or corporate) records because the records "belong" to the government "and are held for the entity only in an agency capacity ...". *In Re Sealed Case,* 950 F.2d at 740. The same point is made by the Eleventh Circuit which wrote that "[w]e hold that a custodian of corporate records ***continues to hold them in a representative capacity*** even after his employment is terminated." *In re Grand Jury Subpoena Dated November 12, 1991,* 957 F.2d at 812 (emphasis supplied).

That is not to say that the representative who produces the documents is totally without protection. *Braswell,* 487 U.S. at 117–18, 108 S.Ct. 2284. The Eleventh Circuit spoke

---

5. The situation might very well be different if the person who had possession of the documents had never been an employee but had obtained the records by breaking and entering into corporate headquarters. That person would never have had the documents in a representative capacity, and although the documents would still be corporate records, it is questionable if the person would be required to produce them over the invocation of a Fifth Amendment privilege. In the instant case, there is no question but that the defendants would not have been able to obtain the records but for their capacity at the time as agents of the corporation. As stated in Defendants' Memorandum, Etc. (#66) at p. 2, "... defendants are former Gloves' employees who have retained possession of corporate documents ...".

specifically to the concerns a former employee would have that producing the documents would establish misappropriation:

> *Braswell* alleviated this ... concern by holding that the custodian's act of producing the documents is made in a representative capacity and thus the government may not make any evidentiary use of the act of production against the individual himself. *Braswell,* 487 U.S. at 118, 108 S.Ct. at 2295.

*In re Grand Jury Subpoena Dated November 12, 1991,* 957 F.2d at 811–2; *see also United States v. McLaughlin,* 126 F.3d 130, 134–5 (3 Cir., 1997).

Of course, the instant case is a civil rather than a criminal case. However, it would seem that the same rule would apply. If a party to a civil case retains the protections of the Fifth Amendment, the limitations on use which may be made of the act of producing corporate documents set forth in *Braswell* would likely be applicable. *Braswell,* 487 U.S. at 118, 108 S.Ct. 2284. However, since this issue has not been briefed by the parties, I make no ruling with respect to the evidentiary use which may be made of the act of production.

### IV. Conclusion

For all of the above reasons, I OVERRULE the assertion of the Fifth Amendment privilege which has been interposed by defendants to producing corporate records of Gloves in response to plaintiffs' requests for production of documents. The defendants are ORDERED to produce the documents to counsel for the plaintiffs *on or before the close of business on Friday, January 12, 2001.*[6]

---

6. It appears that the defendants claim that certain of the requested records are not and never were corporate records but rather are personal documents which they can validly withhold from production on the Fifth Amendment grounds. *See* Defendants' Memorandum, Etc. (# 66) at p. 7, n. 4. If defendants are of the view that there are any such documents which they continue to seek to withhold from production on Fifth Amendment grounds, they may continue to withhold them by notifying the plaintiffs of the specific documents being withheld and by submitting copies of the withheld documents to the undersigned for an *in camera* inspection by close of business on January 12, 2001.

