957 F.2d 807
 60 USLW 2624, 35 Fed. R. Evid. Serv. 1
 In re GRAND JURY SUBPOENA DATED NOVEMBER 12, 1991, FGJ 91-5 (MIA).
David L. PAUL, Appellant.
 No. 92-4129.
 United States Court of Appeals,
Eleventh Circuit.
 March 18, 1992.
 
 Aubrey B. Harwell, Jr., James G. Thomas, Delta Anne Davis, Neal & Harwell, Nashville, Tenn., for appellant.
 Cheryl A. Bell, Asst. U.S. Atty., Miami, Fla., for appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before EDMONDSON, COX and DUBINA, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an expedited appeal from a judgment of civil contempt under the Recalcitrant Witness Statute, 28 U.S.C. § 1826. For the reasons which follow, we affirm.
 
 I. PROCEDURAL BACKGROUND
 
 2
 On November 12, 1991, a federal grand jury for the Southern District of Florida issued a subpoena requiring contemnor-appellant, David A. Paul ("Paul"), to produce documents which largely fall into two general categories: (1) corporate records of CenTrust Bank, which Paul had removed from the bank premises; and (2) residential construction records relating to Paul's estate at 42, 44 and 46 La Gorce Island, Miami Beach, Florida.
 
 
 3
 Paul refused to comply with the grand jury subpoena and filed a motion to quash asserting that (1) his act of producing both corporate and personal documents would incriminate him; (2) the subpoena was overbroad and unduly burdensome; and (3) compliance with the subpoena would violate Florida's non-disclosure statute, Fla.Stat. § 655.057. Paul's primary claim, both before the district court and before us, is that his act of producing both the corporate and personal records sought by the subpoena would incriminate him personally and was therefore protected by the Fifth Amendment to the United States Constitution.
 
 
 4
 The district court held a hearing on Paul's motion to quash on December 18 and 19, 1991. At the conclusion of the hearing, the district court entered an order denying Paul's motion to quash the purely corporate documents (only those documents which both parties had agreed were corporate in nature), pursuant to Braswell v. United States, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); the records were ordered to be produced in three stages--on January 24, 1992, February 14, 1992 and February 28, 1992. As to the claimed personal documents, including Paul's residential construction records, Paul was granted an additional two months, until February 28, 1992, within which to provide the district court with a list of those documents and an explanation as to why the Fifth Amendment privilege should apply.[1]
 
 
 5
 On January 6, 1992, Paul filed on his own initiative a "Notice of Intent to Resist Compliance for Purposes of Obtaining Appellate Review," in which he acknowledged the necessity of the contempt citation as a predicate for appellate review. This notice informed the government and the district court of Paul's decision not to comply with the pertinent portion of the December 23 order well in advance of the January 24, 1992, initial deadline for document production called for by the order. Shortly after Paul filed his notice, the government filed a motion for order to show cause why Paul should not be held in contempt and for modification of deadlines established by the district court's order entered on December 23, 1991. That motion initiated the contempt proceedings underlying this appeal.
 
 
 6
 After Paul defied the district court's order to produce the purely corporate records, the district court issued an order to show cause on February 7, 1992, directing Paul to appear on February 20, 1992, and demonstrate why he should not be held in civil contempt for his disobedience. On February 20, 1992, Paul appeared as directed and conceded that his defiance was willful and deliberate and that he should be held in civil contempt pursuant to 28 U.S.C. § 1826. He also admitted that incarceration was the only appropriate means of coercing compliance with the district court's order to produce the corporate documents. After hearing arguments from both parties, the district court held Paul in civil contempt and sentenced him to conditional incarceration. Paul then moved the district court for a stay or bail pending appeal, which was denied. He then filed a motion for bail pending appeal or, in the alternative, for stay of commitment order in this court which was also denied. Consequently, Paul is presently incarcerated.II. STATEMENT OF THE FACTS
 
 
 7
 The material facts underlying this appeal are not in serious dispute and can be summarized succinctly. Paul was chairman of the board and chief executive officer of CenTrust Bank in Miami, Florida. He served in that capacity from November 1983 through February 2, 1990, when CenTrust was taken over by the Resolution Trust Corporation ("RTC"). Before he was removed from his positions at the bank, Paul admits that he caused a substantial volume of CenTrust corporate documents to be copied, and he kept them when he left. Paul presently exercises custody and control over these corporate documents. He contends that he had copies made of the corporate documents, took them when he left, and has retained them for purposes of defending himself, individually, in the civil, criminal and administrative proceedings that are being mounted against him.[2]
 
 
 8
 By letter dated November 12, 1991, the United States Attorney for the Southern District of Florida informed Paul that he was the target of a federal grand jury investigation of "violations of federal criminal law arising out of the business and financial activities of CenTrust Bank and its related corporations." Among the crimes being investigated are bank fraud, misappropriation of bank funds and property, and false entries on bank records.
 
 III. STANDARD OF REVIEW
 
 9
 The applicability of a privilege involves a mixed question of law and fact. See In re Grand Jury Proceedings 88-9, 899 F.2d 1039, 1042 (11th Cir.1990). Purely factual issues are subject to the "clearly erroneous" standard of review and the application of law to facts is determined de novo by the court of appeals. Newell v. Prudential Ins. Co., 904 F.2d 644, 649 (11th Cir.1990).[3]
 
 IV. ISSUE
 
 10
 The issue presented in this appeal is whether the district court properly held that the production of purely corporate records is not protected by the Fifth Amendment, even when the custodian's employment is terminated after he acquires custody of the corporate records and even though the custodian claims that he had "personal reasons" for acquiring and maintaining the records.
 
 V. ANALYSIS
 
 11
 In his brief, Paul argues that "the 'collective entity doctrine' is inapplicable to the facts of this case because [Paul] had no agency relationship with CenTrust when he was served with the grand jury subpoena, nor has he had such a relationship for over two years (at this point)." The government on the other hand argues that in a line of cases culminating in Braswell, 487 U.S. 99, 108 S.Ct. 2284, the Supreme Court has repeatedly held that a custodian may not resist a subpoena for corporate records on Fifth Amendment grounds. The government contends that the Supreme Court has expressly refused to create an exception for custodians who are no longer employed by the corporation because the corporation no longer exists.
 
 
 12
 The law is clear that an individual may not invoke his personal Fifth Amendment privilege to avoid producing the documents of a collective entity that are in his custody, even if his production of those documents would prove personally incriminating. Braswell, 487 U.S. at 111-112, 108 S.Ct. at 2291-92; Fisher v. United States, 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976); Bellis v. United States, 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974); Wilson v. United States, 221 U.S. 361, 385, 31 S.Ct. 538, 546, 55 L.Ed. 771 (1911); Dreier v. United States, 221 U.S. 394, 400, 31 S.Ct. 550, 550, 55 L.Ed. 784 (1911). Paul urges us to limit the scope of these cases by creating an exception for custodians who are former corporate officers; that is, officers who assumed custody of corporate documents during their employment, but who have terminated their employment with the corporation by the time the grand jury subpoena issues. In dealing with this same argument, the district court stated: "Paul's formalistic view of the Fifth Amendment would directly undermine Braswell, and would create an obvious haven for those who seek to frustrate the legitimate demands for the production of relevant corporate records made by a grand jury." We agree.
 
 
 13
 The Supreme Court has held that a corporation has no Fifth Amendment privilege to refuse to produce its records. Hale v. Henkel, 201 U.S. 43, 74, 26 S.Ct. 370, 378, 50 L.Ed. 652 (1906). Because a corporation can only produce its records through its human representatives, the corollary to this rule is that a corporate representative may not invoke his personal Fifth Amendment privilege to shield corporate records from a subpoena. Braswell, 487 U.S. at 111-112, 108 S.Ct. at 2291-92; Wilson, 221 U.S. at 385, 31 S.Ct. at 546; Dreier, 221 U.S. at 400, 31 S.Ct. at 550. This principle is known as the "collective entity doctrine," and was explained by the Supreme Court in Bellis as follows:
 
 
 14
 In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the corporation would substantially undermine the unchallenged rule that the organization itself is not privileged to claim any Fifth Amendment privilege, and largely frustrate the governmental regulation of such organizations.
 
 
 15
 417 U.S. at 90, 94 S.Ct. at 2184.
 
 
 16
 The question before us, however, is whether the collective entity doctrine applies to custodians who are no longer employed by the corporation. In Braswell, the Supreme Court held that the president and sole shareholder of two corporations could not assert his Fifth Amendment privilege against self-incrimination to the act of producing the books and records of the two entities. The Court specifically rejected Braswell's argument that the "collective entity doctrine" does not apply when a corporation is so small that it constitutes nothing more than the subpoena recipient's "alter ego." 487 U.S. at 102, 108 S.Ct. at 2286. Relying on the "collective entity rule," the Court reasoned that a corporate custodian's act of producing corporate records in response to a subpoena is not a personal act, but a corporate act. Consequently, any Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation, which it does not have. Id. at 110, 108 S.Ct. at 2291.
 
 
 17
 Paul argues, however, that underlying the Braswell opinion is the premise that the subpoena recipient, the putative custodian, holds the subpoenaed documents in a "representative capacity" vis-a-vis the corporation. Paul contends that "representative capacity" vel non was not an issue in Braswell itself. As the Court made clear at the outset, Braswell was the current president and sole shareholder of the two active corporations in question, and he also served as a director. Id. at 100-01, 108 S.Ct. at 2285-86.
 
 
 18
 The government argues that even though Braswell happened to involve a custodian who was a current officer of the corporation, the Supreme Court's refusal to recognize a Fifth Amendment privilege for the custodian's act of production did not depend on that fact. The Supreme Court has in earlier cases refused to hold that termination of the employment relationship somehow terminates the obligation to produce corporate records on proper demand. See Bellis, 417 U.S. at 88-90, 94 S.Ct. at 2182-84; Wheeler v. United States, 226 U.S. 478, 490-91, 33 S.Ct. 158, 162-63, 57 L.Ed. 309 (1913); Grant v. United States, 227 U.S. 74, 79-80, 33 S.Ct. 190, 192, 57 L.Ed. 423 (1913). In Bellis, the Supreme Court expressly addressed the question of whether a different rule should apply because the custodian of the collective entity documents was no longer employed by the entity. Relying on its earlier decisions in Wheeler and Grant, the Court answered this question in the negative. See Bellis, 417 U.S. at 88 and 96 n. 3, 94 S.Ct. at 2183 and 2187 n. 3.
 
 
 19
 In Braswell, the Supreme Court cites Bellis and Wheeler with approval and discusses Bellis at length in analyzing the development of the collective entity doctrine. See Braswell v. United States, 487 U.S. at 108-111, 108 S.Ct. at 2290-92. Thus, though Braswell involved a custodian of corporate records who was a current officer of the corporation, the collective entity doctrine does not provide for any exception for former employees.
 
 
 20
 Other courts considering the act of production privilege have recognized that, in light of the continuing vitality of the collective entity doctrine, a custodian of corporate records has no Fifth Amendment privilege to refuse to produce corporate records merely because his association with the corporation has terminated by the time of the issuance of the subpoena. See In re Grand Jury Subpoena, (85-W-71-5), 784 F.2d 857, 861 (8th Cir.1986); In re Grand Jury Subpoenas Issued to Thirteen Corps, 775 F.2d 43, 45-46 (2d Cir.1985), cert. denied, 475 U.S. 1081, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986); In re Grand Jury Subpoenas, 772 F.Supp. 326, 329 n. 1 & 330 (N.D.Tex.1991); In re Grand Jury 89-4 Subpoenas Duces Tecum, 727 F.Supp. 265, 269 (E.D.Va.1989); Cf. In re Sealed Case, 950 F.2d 736, 740 (D.C.Cir.1991) (relying on the collective entity rationale of Braswell in holding that former government official could not assert Fifth Amendment privilege to withhold production of government documents that she had transferred to her personal custody).
 
 
 21
 In his brief, Paul relies heavily on the Second Circuit's decision in In re Grand Jury Subpoenas Duces Tecum dated June 13, and June 22, 1983, 722 F.2d 981 (2d Cir.1983) (hereinafter referred to as "Saxon"), and argues that it mirrors the present case. In Saxon, the Second Circuit squarely rejected the proposition that the Fifth Amendment privilege cannot be asserted as to the act of producing corporate records, stating that "under Fisher, the standard is not the potential incriminating nature and contents of the documents subpoenaed but whether their mere production would itself tend to incriminate the possessor." 722 F.2d at 986. Saxon recognized that if the appellant had still been a corporate officer or employee, he would normally have been obliged, as a representative of the company, to produce the documents. 722 F.2d at 984, 986 (citing Bellis, 417 U.S. 85, 88-94, 94 S.Ct. 2179, 2183-86). The court concluded, however, that "[o]nce the officer leaves the company's employ ... he no longer acts as a corporate representative but functions in an individual capacity in his possession of corporate records." Id. at 986-87. Once the documents were in the appellant's personal possession, as opposed to possession as a corporate representative, he had the right to invoke "the act of production doctrine outlined in Fisher." Id. at 987. This was true even if he had wrongfully misappropriated the materials in the first instance. Id.
 
 
 22
 We first observe that the Second Circuit's decision in Saxon predated the Supreme Court's decision in Braswell. We also observe that the Second Circuit did not consider the Supreme Court's prior decisions to the contrary in Wheeler and Grant. Moreover, we observe that the decision in Saxon was prompted by the court's concern that the former officer's very act of producing the corporate documents would establish that he misappropriated the documents and that he did so because he had knowledge of their incriminating contents. Id. at 987. Braswell alleviated this latter concern by holding that the custodian's act of producing the documents is made in a representative capacity and thus, the government may not make any evidentiary use of the act of production against the individual himself. Braswell, 487 U.S. at 118, 108 S.Ct. at 2295. Accordingly, we reject the Second Circuit's analysis in Saxon.
 
 
 23
 The Supreme Court in Braswell repeatedly emphasized that corporate records are necessarily held in a representative capacity. 487 U.S. at 118, 108 S.Ct. at 2295. Subsequent to Braswell, other federal courts have acknowledged that those who hold collective entity documents hold them in a representative capacity. See In re Custodian of Records of Variety Distrib., Inc., 927 F.2d 244, 247 & 250 (6th Cir.1991); In re Sealed Case, 877 F.2d 83, 86 (D.C.Cir.1989), cert. denied, 493 U.S. 1044, 110 S.Ct. 839, 107 L.Ed.2d 834 (1990); In re Grand Jury Proceedings 89-8, 742 F.Supp. 1154, 1155 (S.D.Fla.1990); In re Grand Jury 89-4, 727 F.Supp. at 269. We hold that a custodian of corporate records continues to hold them in a representative capacity even after his employment is terminated. It is the immutable character of the records as corporate which requires their production and which dictates that they are held in a representative capacity. Thus, the production of such documents is required regardless of whether the custodian is still associated with the corporation or other collective entity. See Wheeler, 226 U.S. at 490, 33 S.Ct. at 162; Bellis, 417 U.S. at 97-98 & 99, 94 S.Ct. at 2187-88 & 2188; Thirteen Corps, 775 F.2d at 47-48; In re Grand Jury 89-4, 727 F.Supp. at 269.
 
 
 24
 Therefore, we find that when Paul removed corporate documents from CenTrust and transferred them to his own possession, he assumed their custody in a representative capacity and retained the instant obligation to produce the corporate documents upon proper demand by the grand jury. See Braswell, 487 U.S. at 105-109, 108 S.Ct. at 2288-90; Curcio v. United States, 354 U.S. 118, 123-24, 77 S.Ct. 1145, 1149-50, 1 L.Ed.2d 1225 (1957); Wilson v. United States, 221 U.S. at 382, 31 S.Ct. at 545.
 
 
 25
 In his brief, Paul argues, as an alternative theory to avoid application of the collective entity rule, that a custodian who presents "personal reasons" for assuming custody over corporate records should be exempted from the duty to produce them. We reject that argument as specious. From Wilson through Braswell, the collective entity rule has defeated claims of corporate custodians who protested that production of corporate records would be personally incriminating. To allow a custodian to relieve himself of the burden of the collective entity doctrine simply by finding a "personal reason" to abscond with the corporate documents is manifestly contrary to the rationale of Braswell where the Court held:
 
 
 26
 The greater portion of evidence of wrongdoing by an organization or its representatives is usually found in the official records and documents of the organization. Were the cloak of privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible. If custodians could assert a privilege, authorities would be stymied not only in their enforcement efforts against those individuals but also in their prosecutions of organizations.
 
 
 27
 Id. 487 U.S. at 115, 108 S.Ct. at 2294.
 
 
 28
 Paul also misplaces his reliance on selected phrases from United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), to support the proposition that custodians who claim "personal reasons" for holding corporate documents should be exempt from the collective entity rule. While the Supreme Court in White used the terms "purely personal capacity" and "official capacity," a reading of these phrases in context reveals that only purely private papers, not papers of collective entities, are held in a "purely personal" capacity. Id. at 699-700, 64 S.Ct. at 1251-52. Individuals hold collective entity documents in an "official" capacity; that is, "as representatives of a collective group." Id. at 699, 64 S.Ct. at 1251.
 
 
 29
 We find nothing in the White decision that supports the conclusion advanced by Paul that documents originally corporate in nature become protected from disclosure when a corporate officer absconds with them for "personal reasons."
 
 VI. CONCLUSION
 
 30
 Our review of the record in this case, as well as the briefs submitted by the parties, persuades us that the district court properly held that the purely corporate documents in Paul's custody must be produced, regardless of the reasons for which Paul acquired them, and regardless of Paul's subsequent termination from the bank. Accordingly, for the foregoing reasons, we affirm the judgment of the district court.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 The district court has not yet entered a ruling as to the residential construction documents. Paul represents in his brief that he is complying with those aspects of the district court's order, and they are not at issue on this appeal
 
 
 [2]
 We note from the government's brief that on February 28, 1992, a federal grand jury in the Southern District of Florida returned a 22-count indictment against Paul and two co-defendants, charging them with violations of 18 U.S.C. §§ 2, 371, 657, 1001, 1006. Those charges arise from Paul's allegedly fraudulent conduct in connection with various securities transactions. We agree with the government that the intervening indictment does not render moot the issues presented on appeal because the subpoenaed documents are sought in connection with the grand jury's continuing investigation. See In re Grand Jury Proceedings, 632 F.2d 1033, 1040 (3rd Cir.1980); In re Russo, 448 F.2d 369, 374 (9th Cir.1971)
 
 
 [3]
 In his brief, Paul submits that on the record of this case, the issues he presents are pure questions of law. He is not asking this court to reject any findings of fact, implicit or explicit, that the district court made on the record