Betty Jo THOMAS, as Guardian and Conservator for Carmen L. Flores, a minor; Raymond A. Parisza; Janice J. Partridge; David G. Jeffery; Lori L. Ross; Janice J. Partridge, as Executrix of the Estate of Glen E. Jeffery, deceased; and Carol R. Roth, as Administratrix of the Estate of Leta R. Flores, deceased, Plaintiffs,

v.

Ned O. TYLER, Pegler–Sysco Transportation Company; Pegler–Sysco Food Services Company; and their Insurance Carrier, Employers Insurance of Wausau, a Mutual Company, Defendants.

Civ. A. No. 93–1122–MLB.

United States District Court, D. Kansas.

Dec. 15, 1993.

Gene H. Sharp, Rex A. Sharp, Neubauer, Sharp, McQueen, Dreiling & Morain, Liberal, KS, for Carmen L. Flores, Raymond A. Parisza, Leta R. Flores.

Brian G. Grace, Corlin J. Pratt, Grace, Unruh & Pratt, Wichita, KS, for Janice J. Partridge, David G. Jeffery, Lori L. Ross.

Stephen S. Brown, Niewald, Waldeck & Brown, Kansas City, MO, Paul P. Hasty, Jr., Bernard T. Schmitt, Wallace, Saunders, Austin, Brown & Enochs, Gregory F. Maher, Niewald, Waldeck & Brown, Overland Park, KS, for Ned O. Tyler.

Stephen S. Brown, Niewald, Waldeck & Brown, Kansas City, MO, Paul P. Hasty, Jr., Bernard T. Schmitt, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, KS, Stephen W. Brown, Megaffin & Brown, Pratt, KS, Gregory F. Maher, Niewald, Waldeck & Brown, Overland Park, KS, for Pegler–Sysco Transp. Co., Pegler–Sysco Food Services Co., Employers Ins. of Wausau, a Mutual Company.

## *ORDER*

BELOT, District Judge.

This matter comes before the court on defendant Ned O. Tyler's *in camera* brief in support of his assertion of a Fifth Amendment privilege with respect to specific written interrogatories and requests for production of documents (RFPs) propounded by the plaintiffs. Tyler has also submitted a Second Motion for Discovery Stay or in the Alternative for Protective Order. (Doc. 87). Prior to ruling on these important discovery mat-

ters, a factual and procedural history of this case is in order.

## HISTORICAL SUMMARY

On June 8, 1992, a truck driven by Tyler, who was employed by defendant Pegler–Sysco and insured by defendant Wausau Insurance, collided into a line of vehicles at a road construction stop on U.S. Highway 54 in Kiowa County. Three individuals were killed in the collision, and a number of other individuals were injured. As a result, on July 1, 1992, a criminal action was brought against Tyler in Kiowa County district court. Tyler was charged with vehicular homicide, aggravated vehicular homicide, and other less serious crimes. The case is set for trial in January 1994.

On March 30, 1993, plaintiffs filed this civil action against Tyler, Pegler–Sysco, and Wausau. Shortly thereafter, the attorneys for the respective parties began having difficulties with one another. The attorneys representing the various plaintiffs in this civil action entered appearances in Kiowa County district court as special prosecutors in the criminal action against Tyler.[1] The defendants' attorneys became concerned about merging discovery in the criminal and civil actions as a result of the plaintiffs' attorneys' actions. The defendants failed to answer plaintiffs' complaints on time, moved to stay discovery until the criminal action was concluded, and moved for a protective order. The defendants contended that plaintiffs were using civil discovery to assist in the criminal prosecution and that, "[u]ntil the criminal charges are disposed of, defendants will have no alternative but to refuse to respond to discovery on the basis of self-incrimination." (Doc. 15, p. 2). The plaintiffs objected to the defendants' motion to stay discovery and, in turn, moved for default judgment and sanctions. (Doc. 12 & 16). With respect to the defendants' self-incrimination concerns, the plaintiffs acknowledged that "if *Mr. Tyler* feels obligated to take the Fifth Amendment in answering some of the

discovery put to him, that would be his legal right. But he must assert that right to each particular question which he believes, in good faith, could tend to incriminate him." (Doc. 16, p. 2) (emphasis added).

By a July 14, 1993 order, these matters were assigned to U.S. Magistrate Judge Wooley. (Doc. 29). On July 22, 1993, Judge Wooley entered an Order denying the defendants' motion to stay discovery and granting the defendants additional time to respond to plaintiffs' discovery requests. (Doc. 32). In that Order, Judge Wooley instructed the defendants as follows:

> Notwithstanding approval of the motion to extend time, defendants' responses to plaintiffs' outstanding discovery are now completely overdue, without authorization or excuse. Defendants shall have 21 days from this date (until August 10, 1993) to produce records, documents, and substantive responses required by plaintiffs' Request for Production of Documents and Interrogatories served on defendants simultaneously with the Summons and Complaint. Defendants have waived their right to object to plaintiffs' discovery and must answer substantively.

(Doc. 32, p. 2). The defendants, nevertheless, refused to respond to most of the RFPs and written interrogatories presented by the plaintiffs, maintaining that some of the discovery requests had not been received and asserting Fifth Amendment and attorney-client privileges with respect to others. The defendants *collectively* asserted a Fifth Amendment privilege without responding to each of the plaintiffs' RFPs and written interrogatories in particular or explaining how responding would incriminate them. In response, plaintiffs submitted requests for admission requesting that the defendants admit, with respect to each interrogatory and RFP, that responding *would* tend to incriminate them. The defendants refused to respond to these requests for admission as well.

---

1. Tyler does not claim that this somewhat unusual arrangement is improper. The arrangement nevertheless has been on the court's mind because the documents now at issue obviously will be relevant in the state criminal case and, if ordered to be turned over to plaintiffs, will be immediately available to the prosecutors.

On August 16, 1993, the plaintiffs once again moved for sanctions for discovery abuses, objecting to the defendants' failure to respond and their blanket assertions of the Fifth Amendment privilege in contravention of Judge Wooley's July 22 Order. (Doc. 37). The defendants responded by asserting, *inter alia*, that the *corporate* defendants had a Fifth Amendment privilege in this particular case and that some of the documents which were responsive to the plaintiffs' RFPs were in the custody of Tyler's criminal attorney, Steve Joseph. (Doc. 45, pp. 6–7). Plaintiffs then made another motion for sanctions and a motion for an order compelling the defendants to properly respond to their discovery requests. (Doc. 53) Plaintiffs moved for a hearing on the matter. (Doc. 54). The defendants maintained their refusal to respond on Fifth Amendment grounds. (Doc. 57).

On October 13, 1993, the court issued an Order scheduling a hearing on the plaintiffs' motions for sanctions and directing and admonishing the defendants as follows:

> On or before October 22, 1993, defendants' counsel shall provide to the court, *in camera, fully answered and signed* in accordance with the rules and *without regard to any objection previously made or privilege asserted,* responses to all discovery requests (interrogatories, requests for production of documents and requests for admission) mentioned in the motion for sanctions (Doc. 37) or otherwise unanswered or incompletely answered which have been served upon defendants by plaintiffs. Each discovery request must be responded to separately. "General" or "blanket" responses such as have been made previously will not be tolerated. All documents "loaned" or otherwise furnished to counsel Steve Joseph (or anyone else) shall be retrieved and shall be attached to the answers to the discovery requests. The documents shall be labelled to indicate the request to which they are responsive.
>
> All objections to discovery requests served prior to July 22, 1993 are deemed

to have been waived as indicated in Judge Wooley's order, with the sole exception of claims of fifth amendment privilege. Should such claims be reasserted, they shall be made in a separate document. The court will accept only specific, succinct claims which are separately made with respect to each discovery request. "General" or "blanket" claims of privilege will not be tolerated. Each claim of privilege shall state with specificity why and how the answering party claims an answer to a specific request will contravene the privilege. All claims of privilege must be supported by relevant, current authority.

(Doc. 65, pp. 2–3).

Notwithstanding the court's clear orders, the defendants' attorneys mailed a letter dated October 22, 1993 to the court regarding their assertion of the Fifth Amendment and attorney-client privileges. The letter stated that the defendants "respectfully assert *their* Fifth Amendment privilege to refrain from answering those interrogatories and/or requests for production that may tend to incriminate *them.*" (emphasis added). The letter offered no relevant authority in support of this collective reassertion of a Fifth Amendment privilege.

At best, the letter demonstrated defendants' attorneys profound misunderstanding of the law regarding the Fifth Amendment and its application to collective entities such as corporations. In all probability, the letter was nothing less than a deliberate attempt by defendants' counsel to continue to ignore this court's orders regarding discovery. Given the fact that Tyler was the only defendant being prosecuted and the Supreme Court's clear pronouncements that corporations do not have a Fifth Amendment privilege, *see, e.g., Braswell v. United States,* 487 U.S. 99, 105, 108 S.Ct. 2284, 2288, 101 L.Ed.2d 98 (1988) (stating that *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) settled long ago that "a corporation has no Fifth Amendment privilege") [2], the court found the

---

2. The Fifth Amendment privilege is "limited to its historical function of protecting only the natural individual from compulsory incrimination." *Bellis v. United States,* 417 U.S. 85, 89–90, 94 S.Ct. 2179, 2184, 40 L.Ed.2d 678 (1974). In

fact, the *Braswell* case makes clear that there is absolutely, positively *no* circumstance in which corporate records or the act of producing corporate records, by the corporation or any person connected therewith, falls within the scope of the

defendants' attorneys' continued representations concerning the *defendants'* Fifth Amendment privileges to be frivolous and malicious. Accordingly, on November 1, 1993, at the scheduled hearing, the court ordered sanctions against the defendants' attorneys and ordered the corporate defendants to respond properly to plaintiffs' interrogatories and RFPs. The court, however, remained sensitive to Tyler's assertions of his Fifth Amendment privilege, and heard argument from Tyler's criminal attorney, Steve Joseph, who was present at the November 1 hearing.[3] The court ordered Mr. Joseph to assist Tyler in preparing supplemental responses to plaintiffs' discovery requests and to submit any allegedly privileged answers to the court *in camera* together with an *in camera* brief.

The court has since received an *in camera* brief from Mr. Joseph in support of Tyler's assertion of a Fifth Amendment privilege. The brief indicates as follows: Since the court's November 1, 1993 hearing, Tyler has, with the help of Mr. Joseph, supplemented his original responses to a number of interrogatories and RFPs. However, Tyler continues to assert his Fifth Amendment privilege with respect to interrogatories # 8, 9, 10, 11, & 13 and RFPs # 4 & 9 submitted by plaintiffs Partridge, Jeffery, and Ross. *In camera* responses to these interrogatories and RFPs are included as exhibits to the *in camera* brief. In addition, on behalf of Tyler, Mr. Joseph has filed a motion to stay discovery or for a protective order in this civil matter. (Doc. 87).

### TYLER'S FIFTH AMENDMENT PRIVILEGE

■ The court recognizes that the Fifth Amendment can be asserted in a civil action

by a defendant who, like Tyler, is also a criminal defendant in a related criminal action. *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The prosecution in a criminal case cannot circumvent a criminal defendant's Fifth Amendment privilege via the civil discovery process. However, civil discovery does not come to a standstill simply because a related criminal action has also been filed against one of the civil defendants. Instead, a defendant's Fifth Amendment privilege carries equal weight in both the criminal and civil actions. Thus, the court must jealously guard Tyler's Fifth Amendment privilege in the present case as though this were a criminal action.

■ By its own terms, the Fifth Amendment protects a criminal defendant from being compelled to disclose matters which would make him "a witness against himself." The Amendment is to be liberally construed in favor of the criminal defendant. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). So construed, the Fifth Amendment "protects against disclosures the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used," *Kastigar,* 406 U.S. at 444–45, 92 S.Ct. at 1656, and extends to any answer that would furnish a "link in the chain of evidence" needed to prosecute the defendant. *Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818. However, "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial*

---

Fifth Amendment privilege against self-incrimination. *Braswell* states, quite simply, that a corporation must find some way to respond to subpoenas and discovery requests addressed to it, because no Fifth Amendment defense is available to it. *Id.,* 487 U.S. at 116, 108 S.Ct. at 2294.

**3.** The defendants' letter to the court dated October 22, 1993 indicated, on page 3, as follows:
With regard to the documents in the possession of Mr. Joseph, counsel for the civil defendants would advise the Court that they have requested that Mr. Joseph make those documents available to them. Mr. Joseph has not

done so, but has advised counsel for the civil defendants that he will be in attendance at the November 1, 1993 hearing to discuss this matter with the Court and will have with him documents previously furnished to him.
Despite this contravention of the court's October 13 order that "[a]ll documents 'loaned' or otherwise furnished to counsel Steve Joseph (or anyone else) shall be retrieved and shall be attached to the answers to the discovery requests," (Doc. 65, p. 2), the court agreed to hear argument from Mr. Joseph in order to assure that Tyler's Fifth Amendment privilege was honored.

communication that is incriminating." *Fisher v. United States,* 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976).

## I. *Tyler's Assertion of the Privilege With Respect to Plaintiffs' Interrogatories*

Tyler has refused to respond to certain written interrogatories, submitted by plaintiffs Partridge, Jeffery, and Ross, on the grounds that his answers might tend to incriminate him. The court will now consider whether Tyler's *in camera* answers to each of these interrogatories have incriminating tendencies.

### A. *Interrogatory # 8(a), (d), (f), & (h):*

■ "In reference to the trip and cargo you were transporting at the time the accident occurred, please state:

(a) The exact date, location and approximate time of your departure from an origin point where you traveled from that point to the location where you either loaded the cargo and/or picked up the loaded trailer ultimately involved in the accident. . . .

(d) The exact date, approximate time, and identify by complete name and address, the location where you picked up the cargo and/or trailer ultimately involved in the accident. . . .

(f) The exact date and approximate departure time from the point where you picked up the cargo or loaded the trailer. . . .

(h) Prior to your stop at the accident location, please state the date, approximate time, and the location where you last stopped forward motion of your tractor and trailer for any length of time (excluding stop and go signals and corner turns), indicating the reason for the stop and the approximate length of time you were stopped."

Upon *in camera* review of Tyler's answers to this set of interrogatories, the court finds that his answers might tend to incriminate him and that his assertion of a Fifth Amendment privilege should therefore be sustained. Tyler will not be required to answer this set of interrogatories.

### B. *Interrogatory # 9:*

■ "Were you in violation of the driving or work time limitations on June 8, 1992 when the accident occurred? If so, please state the number of hours you were in violation:

(a) In reference to the 70–hour limitation.

(b) In reference to the 15–hour limitation.

(c) In reference to the 10–hour limitation."

Upon *in camera* review of Tyler's answers to this set of interrogatories, the court finds that his answers might tend to incriminate him and that his assertion of a Fifth Amendment privilege should therefore be sustained. Tyler will not be required to answer this set of interrogatories.

### C. *Interrogatory # 10:*

■ "In the last six (6) years (January 1, 1988 to present), have you received any traffic citations for moving violations from any local, state or federal enforcement officers? If so, please state:

(a) The approximate date, time and location of the issuance of each citation.

(b) The type of violation(s) listed on each citation.

(c) The law enforcement agency issuing the citations, inclusive of the name of their employer (name of city, county, state or federal enforcement agency).

(d) The identity of the court each citation was filed in, indicating the city, county, or "JP" (Justice of the Peace) location to the best of your knowledge.

(e) The penalty imposed upon you for each violation."

Upon *in camera* review of Tyler's answer to this set of interrogatories, the court finds that his answer has no tendency to reveal that Tyler engaged in criminal activities with respect to the charges brought against him in Kiowa county or any other criminal prosecution that may conceivably be initiated against him. The following answer was submitted by Tyler *in camera:* "I remember that in 1992 I received a speeding ticket by the Nebraska State Patrol for which I was fined.

I do not remember anything else about this incident."

D. *Interrogatory # 11:*

█ "Please state the location, address, city and state where you took eight (8) consecutive hours off duty, immediately before the accident in question, indicating the date(s) and the time you went off duty and the date and time you returned to duty."

Upon *in camera* review of Tyler's answer to this interrogatory, the court finds that his answer might tend to incriminate him and that his assertion of a Fifth Amendment privilege should therefore be sustained. Tyler will not be required to answer this interrogatory.

E. *Interrogatory # 13:*

█ "When the accident occurred (June 8, 1992), did you have in your possession a personal telephone credit card or any type of credit card that you utilize in charging the cost of telephone calls? If so, please identify each such credit card utilized in making any calls to any person or organization from May 1, 1992 through June 8, 1992 by listing the issuing credit card organization, its address, the credit card number, and expiration date."

Upon *in camera* review of Tyler's answer to this interrogatory, the court finds that his answer might tend to incriminate him and that his assertion of a Fifth Amendment privilege should therefore be sustained. Tyler will not be required to answer this interrogatory.

II. *Tyler's Assertion of the Privilege With Respect to Plaintiffs' Requests for Production of Documents*

Tyler has refused to respond to the following requests for production of documents (RFPs), submitted by plaintiffs Partridge, Jeffery, and Ross, on the grounds that doing so might tend to incriminate him or lead to the discovery of other incriminating evidence:

"4. Complete and clearly readable copies of all driver's record of duty status or driver's daily logs and 70/60–hour summaries (see Definition K) or otherwise described work time records created by Ty-

ler for the period from May 1, 1992 through June 8, 1992 in accordance with [Federal Motor Carriers Safety Regulations] Part 395 (see Definitions M and N) in the personal possession of Tyler."

"9. Complete and clearly readable copies of any and all operational documents (see Definition H) in the personal possession of Tyler for operations from May 1, 1992 through June 8, 1992. Please refer to subdefinitions "H–1 through H–17" found in Definition H herein and follow them closely, grouping and identifying all documents produced by each trip occurring during the time period requested."

More specifically, Tyler argues that even though the documents requested in these RFPs are not themselves privileged, his *act of producing* the documents will be both testimonial and incriminating for purposes of the Fifth Amendment. *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). Because *Doe* recognizes that resolution of a "testimonial act" claim may depend upon the facts of each case, *id.* at 613, 104 S.Ct. at 1242, the court will discuss the facts relating to the documents before it turns to a discussion of Tyler's specific arguments.

█ Tyler has identified five types of documents which are responsive to plaintiffs' requests. They are set forth in an *"in camera* affidavit" signed by William Lewis, Vice-President–Finance and Administration of Pegler–Sysco Food Services Company and Secretary and Treasurer of Pegler–Sysco Transportation Company. (Attached as Exhibit A). The court finds that the information contained in Lewis' affidavit is not privileged or otherwise exempt from disclosure. As previously noted, Pegler is a corporation and cannot assert a Fifth Amendment privilege. While Tyler does have the privilege, he cannot assert it to bar information known to Lewis, even if the information might or will tend to incriminate Tyler.

In his affidavit, Lewis states that, in June 1992, he "placed the daily log records, time cards, trip records, vehicle condition reports and copies of Tyler's expense receipts created by Ned Tyler for the period May 1 through June 8, 1992, in the hands of their

attorney, David Parker," and that on March 16, 1993, "Parker, acting on behalf of Pegler–Sysco Food Services Company and Pegler–Sysco Transportation Co., transferred these documents to Ned Tyler by giving them to his attorney, Stephen M. Joseph." Lewis further states that, in transferring the documents to Mr. Joseph, Pegler "intended to transfer ownership of those documents to Tyler" only to the extent that regulations no longer required Pegler to keep the documents on hand. Lewis indicates that "Pegler was required by regulation to keep ... the time cards and trip records." According to Lewis, "Pegler has asked Tyler's attorney to return those documents," but "Tyler's attorney has refused."

Lewis' affidavit does not explain why Pegler transferred the documents to its attorney or why its attorney later gave the documents to Tyler's attorney. The affidavit merely notes that Pegler was not prevented by law or regulation from doing so. It is clear, however, that Pegler's attorney either knew, or had every reason to know, that Tyler had been charged and that the documents either did, or could, contain information which was relevant to the charged conduct. Furthermore, although Pegler had not yet been sued, even a marginally competent attorney representing Pegler would have every reason to believe that Pegler *would* be sued and that the documents would be relevant to the issues raised in the lawsuit. In the absence of some innocent explanation, a fair inference from these facts is that Pegler's attorney knew that Pegler could not protect the documents from disclosure either in the criminal or in any civil case and that it sought to prevent their discovery and disclosure by transferring the documents to Tyler's attorney. It is with this factual setting in mind that the court turns to a discussion of Tyler's claims.

A. *The Required Records Exception Applies to the Log Books and Vehicle Condition Reports*

■ In *Shapiro v. United States*, 335 U.S. 1, 33, 68 S.Ct. 1375, 1392, 92 L.Ed. 1787 (1948), the Supreme Court held that Fifth Amendment protection does not extend to records that are required to be kept by law. As Tyler readily admits, the log books and vehicle condition reports were required to be kept under 49 C.F.R. § 395.8(a). (Tyler's *in camera* brief, p. 23). The required records exception applies to these documents if three requirements are met: (1) the purpose for which the records are required to be kept is regulatory in nature; (2) the records contain the type of information that the regulated party would ordinarily keep; and (3) the records "have assumed 'public aspects' which render them at least analogous to public documents." *Grosso v. United States*, 390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968). There can be little question that all three of these requirements are met in the present case.

■ Tyler contends that, although the log books and vehicle condition reports were initially made and kept in order to comply with governmental regulations, because those records have already been kept for the required amount of time pursuant to 49 C.F.R. § 395.8 and could simply have been discarded, they are no longer "required" and do not fall within the required records exception. Tyler cites no authority in support of this argument, however, and the court rejects it. The log books and vehicle condition reports meet the three requirements above. They were required for an ostensibly regulatory purpose, contain information that a truck driver or corporation which uses trucks to transport its products would ordinarily be expected to keep, and are certainly imbued with public aspects in that they are the sort of records which must be disclosed to a public agency. The public nature of the log books and vehicle condition reports is not negated or destroyed by the fact that they already had been kept for the minimum length of time required by regulation. The court is satisfied that under the circumstances present in this case, Tyler has no legitimate Fifth Amendment privilege to claim with respect to the drivers logs and vehicle condition reports, which he admits are public documents.

B. *The Collective Entity Doctrine*

■ Under the collective entity doctrine, as clarified in *Braswell v. United States*, 487

U.S. 99, 111–12, 108 S.Ct. 2284, 2291–92, 101 L.Ed.2d 98 (1988), an individual may not invoke the Fifth Amendment privilege to avoid producing the documents of a corporation or other collective entity that are in his custody, even if his act of producing those documents might be personally incriminating. Tyler argues that the collective entity rule does not apply in the present case because the log books, vehicle condition reports, time cards, trip records and receipts for travel expenses are not "corporate records" and are not merely in his "custody":

> Whether or not these records were once corporate records, Tyler does not hold them as the records custodian for Pegler. As set forth in the affidavit of William Lewis (attached as Exhibit 4), Pegler intended to give up any ownership or possessory interest in the documents, except for the trip records and time cards, when it gave them to Tyler. Tyler claims ownership of all the records.

### 1. The Collective Entity Doctrine Applies to the Time Cards and Trip Records

■■■■ The *in camera* affidavit of William Lewis states that, in transferring the documents to Mr. Joseph, Pegler "intended to transfer ownership of those documents to Tyler" only to the extent that regulations no longer required Pegler to keep the documents on hand. Lewis indicates that "Pegler was required by regulation to keep … the time cards and trip records." According to Lewis, "Pegler has asked Tyler's attorney to return those documents," but "Tyler's attorney has refused."

There is no basis for Tyler to assert a Fifth Amendment privilege with respect to the "time cards and trip records" that were given to him by Pegler. Pegler never intended to "give up ownership in" the time cards and trip records, and these documents clearly were and remained "corporate records." Tyler may not resist discovery of such records on Fifth Amendment grounds. *See Braswell,* 487 U.S. at 109, 108 S.Ct. at 2290.

### 2. The Collective Entity Doctrine Applies to the Log Books, Vehicle Condition Reports, and the Receipts for Travel Expenses, As Well

■■■ With regard to the remaining documents submitted *in camera*—Tyler's log book and vehicle condition reports (which are also subject to disclosure under the "required records" exception), as well as the receipts for travel expenses—Lewis's affidavit does claim that ownership of these documents passed from Pegler to Tyler in June of 1992. Tyler contends, based on the Supreme Court's analysis in the *Braswell* opinion, that because he is the owner and not a mere "custodian" of these documents, his act of producing them falls within the scope of his own Fifth Amendment privilege against self-incrimination.

In *Braswell,* a federal grand jury issued a subpoena to Braswell, the president and owner of two corporations, ordering him to produce corporate records. 487 U.S. at 100–01, 108 S.Ct. at 2285–86. Braswell moved to quash the subpoena on the grounds that the act of producing the documents would tend to incriminate him personally. *Id.* After reviewing its litany of decisions concerning the Fifth Amendment privilege and its applicability to records kept by corporations and other collective entities, the Court held that "whether the subpoena is addressed to the corporation, or as here, to the individual in his capacity as a custodian, a corporate custodian such as petitioner may not resist a subpoena for corporate records on Fifth Amendment grounds." *Id.* at 108–09, 108 S.Ct. at 2290 (citations omitted). The Court offered the following "agency rationale undergirding [its] collective entity decisions" as support for its holding:

> [T]he Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. Artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government. Under those circumstances, the custodian's

act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege.

*Id.* at 109–10, 108 S.Ct. at 2291 (citation omitted). The Court accordingly ordered that Braswell had to comply with the subpoena and produce the corporate records, but that the Government could "make no evidentiary use" of Braswell's act of production against Braswell personally. *Id.* at 118, 108 S.Ct. at 2295.

Looking to the rationale used by the Supreme Court to support its holding in *Braswell,* Tyler argues that because he is not a "custodian" of the documents requested by plaintiffs, his act of producing the documents would not be attributable to Pegler, the corporation, and the state prosecutors could "make evidentiary use" of his act of production against him:

> The fiction that the corporation rather than the custodian produces the documents, which the [C]ourt fashioned as a remedy to prevent the custodian from being forced to authenticate the documents, only make[s] sense and only works if the individual producing the records is in fact a custodian and if the records are owned by the corporation.
>
> In the present case, the government cannot protect Tyler by introducing evidence that the "corporation" produced the records because the corporation does not own them to produce. Tyler does not hold them in a representative capacity or as a custodian. *He* owns them. Telling the jury that the corporation produced them would be a flat out lie. Tyler can only produce the records as an individual. Con-

sequently, his assertion of the privilege against self-incrimination is individual, as well.

(Tyler's *in camera* brief, pp. 16–17).

The court is not persuaded by Tyler's argument. All of the documents were created by Tyler in connection with his employment. Pegler is neither Tyler's corporation nor his sole proprietorship. Tyler voluntarily surrendered the documents to Pegler as part of his duties. Assuming, without deciding, that the documents contained information which incriminated Tyler and further assuming, without deciding, that he could have declined to surrender the documents on the basis of his Fifth Amendment privilege, Tyler voluntarily gave up his privilege by voluntarily giving the documents to Pegler. At that point, the documents became Pegler's property and "corporate records." He and Pegler cannot somehow recreate a Fifth Amendment privilege on his behalf (Pegler having none) by colluding to alter the ownership of the documents by a game of "document hot potato." Pegler's transfer of the alleged "ownership" of its corporate records to Tyler *did not* effectively alter the status of these records and Tyler's relation to them for purposes of civil discovery in this matter. The documents which were *purportedly* transferred to Tyler by Pegler are still "corporate records" and Tyler is a "custodian" thereof. Therefore, production of the records will not be a testimonial communication by Tyler *as an individual,* and, under the collective entity doctrine as clarified in *Braswell,* there can be no Fifth Amendment privilege in the act of producing these documents. This holding is supported by analogous *post-Braswell*[4] decisions of other courts.

For example, in *In re Grand Jury Subpoena Dated Nov. 12, 1991,* 957 F.2d 807 (11th

---

4. Tyler points to two cases indicating that individuals holding business records in a personal rather than a representative capacity may invoke the Fifth Amendment if the act of producing such records might tend to incriminate them: *In re Grand Jury Subpoenas Duces Tecum,* 722 F.2d 981 (2d Cir.1983) and *In re Grand Jury Subpoenas, Aug. 1986,* 658 F.Supp. 474 (D.Md.1987). These cases, however, have little precedential value. They were decided *pre-Braswell,* appear to "undermine the holding of *Braswell,*" do not

directly address the situation at hand in the present case, and are not from this circuit. *In re Grand Jury Subpoena Dated Nov. 12, 1991,* 792 F.Supp. 1423, 1428 (S.D.Fla.1992), *aff'd,* 957 F.2d 807 (11th Cir.1992). Moreover, given the court's conclusion that the requested documents are corporate records and that Tyler is a custodian, Tyler holds the documents in a representative capacity, and thus the two cases cited by Tyler do not contradict the court's ruling herein.

Cir.1992), a federal grand jury issued a subpoena requiring a former bank chairman to produce certain records he had removed from the bank's premises while still an employee of the bank. The former chairman claimed that he held the records in a personal rather than representative capacity at the time he was served with the subpoena and that his Fifth Amendment privilege against self-incrimination therefore encompassed his act of producing the documents. *Id.* at 808. The district court disagreed, finding that "[n]either the documents' corporate character, nor the fact that they came into Paul's possession in a representative capacity, has changed simply because Paul left the bank at a later time." *In re Grand Jury Subpoena Dated Nov. 12, 1991,* 792 F.Supp. 1423, 1428 (S.D.Fla.1992), *aff'd,* 957 F.2d 807 (11th Cir. 1992). On appeal to the Eleventh Circuit, the former bank chairman argued that an exception to the *Braswell* collective entity rule should be crafted for former employees who no longer stand in a representative capacity with respect to the corporation and have taken corporate documents as their own personal property for personal reasons. 957 F.2d at 810, 812–13. The Government countered by arguing that such an exception would " 'directly undermine *Braswell*' " and " 'create a haven for those who seek to frustrate the legitimate demands for the production of relevant corporate records.' " *Id.* at 810. The Eleventh Circuit agreed, holding that "a custodian of corporate records continues to hold them in a representative capacity even after his employment is terminated" and rejecting the argument that "documents originally corporate in nature become protected from disclosure when a corporate officer absconds with them for 'personal reasons.' " *Id.* at 812–13.

Analogizing the *Subpoena Dated Nov. 12, 1991* case to the present case, the court similarly finds that the corporate character of the log books, vehicle condition reports, and receipts for travel expenses has not somehow been altered by the purported transfer of these documents to Tyler. Rather, the documents continue to be corporate records, not private ones, and Tyler holds the documents in a representative capacity. To hold otherwise would, in the court's opinion, " 'directly undermine *Braswell*' " and " 'create a haven for those who seek to frustrate the legitimate demands for the production of relevant corporate records.' " *Id.* at 810. Also, it would make the court a player in Tyler and Pegler's game of "document hot potato," a role which the court declines to assume.

C. *Incriminating Effect of the Act of Production*

■ Finally, even if the court was to agree with Tyler's arguments that the log books, vehicle condition reports, time cards, trip records and receipts for travel expenses are neither "required records" nor "corporate records," the court would still require Tyler to produce these documents because, despite Tyler's assertions to the contrary, his *act of production* could not operate to incriminate him.

■ There is no question that the *contents* of the requested documents are not privileged. *Braswell v. United States,* 487 U.S. 99, 102, 108 S.Ct. 2284, 2286, 101 L.Ed.2d 98 (1988). As Tyler himself concedes, "[t]he contents of business records ordinarily are not privileged because they are created voluntarily and without compulsion." *Doe,* 465 U.S. at 608–09, 104 S.Ct. at 1240. The "act of producing evidence," however, may have its own testimonial or communicative aspects completely separate and exclusive from the contents of the documents produced. *Id.* at 612–13, 104 S.Ct. at 1242; *Fisher,* 425 U.S. at 410, 96 S.Ct. at 1581. If the communication resulting from the act of production itself—that is, independent of the *contents* of the documents produced—tends to incriminate the person producing the documents, then that person may rely on the Fifth Amendment to avoid disclosure. *Doe,* 465 U.S. at 613–14, 104 S.Ct. at 1242–43; *Fisher,* 425 U.S. at 410–13, 96 S.Ct. at 1581–82.

For example, in *Doe,* a defendant's act of production was deemed privileged because, by simply producing the documents requested, the defendant communicated to the Government that the documents existed, were in his possession, and were authentic, facts of

which the Government was not already aware. 465 U.S. at 613–14, 614 n. 13, 104 S.Ct. at 1242–43, 1243 n. 13 (deferring to district court's ruling); *see Baltimore City Dep't of Social Servs. v. Bouknight,* 493 U.S. 549, 554–55, 110 S.Ct. 900, 904–05, 107 L.Ed.2d 992 (1990) (reaffirming that the act of production may be incriminating if it testifies to "the existence, possession, or authenticity of the things produced"). By contrast, in *Fisher,* the Court found that "the existence and location of the papers [was] a foregone conclusion and the taxpayer add[ed] little or nothing to the sum total of the Government's information by conceding that he in fact ha[d] the papers." 425 U.S. at 411, 96 S.Ct. at 1581.

Tyler argues that his production of the requested documents would have testimonial significance similar to that in the *Doe* case. That is, according to Tyler, his act of production would communicate that the documents exist, that Tyler has them, and that the documents are authentic. (Tyler's *in camera* brief, pp. 13–14). There is one very significant difference, however, between the documents at issue in *Doe* and the documents at issue in the present case: In *Doe,* the records in question were always in the defendant taxpayer's own possession, and no one else could testify to their existence.[5] By contrast, in the present case, all the documents have previously been delivered into the hands of Tyler's employer, Pegler, and the prosecution can thus rely on Pegler to show their existence, possession, and authenticity. *See United States v. Clark,* 847 F.2d 1467, 1472 (10th Cir.1988) (distinguishing *Doe* on this basis). Lewis or another Pegler official can be called to identify each of the documents at the state criminal trial, and thus "actual authentication of the records for evidentiary purposes is easily accomplished without reliance on the act of production." *Id.* at 1473. Hence, Tyler's act of production

would add "little or nothing to the sum total of the [prosecution's] information." *Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581. For this reason, the court finds Tyler's act of producing the requested documents would have no incriminating testimonial significance and is therefore not privileged under the Fifth Amendment.

## *TYLER'S MOTION TO STAY DISCOVERY OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER*

■ Steve Joseph, Tyler's *criminal* attorney, has filed a motion on behalf of Tyler in this civil action to stay discovery or obtain a protective order. (Doc. 88). As the previous discussion of this case's procedural history reveals, the court ordered Mr. Joseph, at the November 1, 1993 hearing, to assist Tyler in responding to plaintiffs' discovery requests and to provide *in camera* responses and an *in camera* brief with respect to any remaining assertions of the Fifth Amendment privilege. The court did so because the lawyers who have entered their appearance for Tyler in this *civil* action, Stephen S. Brown and Gregory F. Maher, repeatedly refused to follow this court's orders with respect to discovery. In contrast, the court knew that it could rely upon Mr. Joseph to conduct himself properly—and he has. The court acknowledges that by injecting Mr. Joseph into this civil discovery matter, it may have implied that a motion to stay discovery would be entertained. That, however, was not the court's intention. The court sincerely appreciates Mr. Joseph's cooperation in handling the Fifth Amendment issues, but Mr. Joseph has not otherwise entered his appearance and thus will not be allowed to generally represent Tyler in this *civil* matter. Tyler's motion to stay discovery or for a protective order is therefore denied.[6]

---

**5.** The court observes that unlike documents produced by an individual to a grand jury, documents produced during civil discovery may not be self-authenticating for purposes of a state criminal trial. This, of course, would be a matter for decision by the state court judge under state law.

**6.** The court will note that it has previously considered motions similar to the present one filed by the defendants and has denied them. Judge Wooley's initial ruling in this respect continues to reflect the court's position: "In this district, a motion to stay discovery is viewed with disfavor, and the court does not believe the present circumstances warrant such a drastic measure." (Doc. 32, p. 4).

IT IS ACCORDINGLY ORDERED this 15th day of December 1993 at Wichita, Kansas, that Tyler's motion to stay discovery or for a protective order (Doc. 87) is denied. The documents submitted *in camera* by Tyler in response to plaintiffs' requests for production shall be turned over to plaintiffs' counsel within 5 working days after the date of this order. Tyler's assertion of his Fifth Amendment privilege is sustained with respect to interrogatories # 8, 9, 11, and 13, and overruled with respect to interrogatory # 10. Tyler's *in camera* response to interrogatory # 10 has, by its inclusion in this Order, already been disclosed to the plaintiffs, but the answer will be served in accordance with the rules within 5 working days.[7]

Motions for reconsideration of this order are not invited but in the event they are forthcoming, they shall be filed no later than 5 days from the date of this order. Responses, if any, likewise shall be filed within 5 days. No replies will be allowed. Motions and responses shall not exceed 5 pages, including exhibits and attachments, if any.

## EXHIBIT A

### STATE OF NEBRASKA

)ss:

### COUNTY OF LANCASTER

*IN CAMERA AFFIDAVIT*
*OF BILL LEWIS*

William R. Lewis, being of lawful age and duly sworn under oath, states as follows:

1. I am the Vice President–Finance and Administration of Pegler–Sysco Food Services Company and the Secretary and Treasurer of Pegler–Sysco Transportation Co.

2. In June of 1992, Pegler–Sysco Food Services Company and Pegler–Sysco Transportation Co. placed the daily log records, time cards, trip records, vehicle condition reports and copies of Tyler's expense receipts created by Ned Tyler for the period May 1 through June 8, 1992, in the hands of their attorney, David Parker.

3. On March 16, 1993, David Parker, acting on behalf of Pegler–Sysco Food Services Company and Pegler–Sysco Transportation Co., transferred these documents to Ned Tyler by giving them to his attorney, Stephen M. Joseph.

4. Neither Pegler–Sysco Food Services Company nor Pegler–Sysco Transportation Co. retained or claims any ownership interest in any of the documents that it was not required by regulation to keep. It intended to transfer ownership of those documents to Tyler. The only documents that Pegler was required by regulation to keep were the time cards and trip records.

5. Pegler has asked Tyler's attorney to return those documents that it did not intend to give up ownership in. Tyler's attorney has refused to return them.

6. When these documents were given to Tyler, neither company was prevented by any governmental regulation or law from transferring to Tyler the documents in which they gave up ownership.

FURTHER AFFIANT SAYETH NOT.

/s/ <u>William R. Lewis</u>
WILLIAM R. LEWIS

Subscribed and sworn to before me this 22nd day of November, 1993 by WILLIAM R. LEWIS.

/s/ <u>Nancy J. Dufek</u>
Notary Public

My Appointment Expires:

July 7, 1996

---

7. This order is not a final decision on the merits of the case and, except in extraordinary circumstances, is not immediately appealable. Nevertheless, should an immediate appeal be contemplated, counsel's attention is invited to the Tenth Circuit's recent decision in *Boughton et al. v. Cotter Corporation, et al.*, 10 F.3d 746 (10th Cir. 1993).